S. E. Laszlo *v.* United States [1]

United States Customs Court, Second Division

(Decided October 17, 1938)

*Puckhafer & Rode (George J. Puckhafer* of counsel) for the plaintiff.
*Charles D. Lawrence,* Acting Assistant Attorney General (*Joseph E. Weil,* special attorney), for the defendant.

Before Tilson, Kincheloe, and Dallinger, Judges

Dallinger, Judge: These are suits against the United States, arising at the port of New York, brought to recover certain customs duties alleged to have been improperly exacted on particular importations of air-pistols and so-called pistolets, and parts thereof. Duty was levied thereon at the rate of 45 per centum ad valorem under paragraph 397 of the Tariff Act of 1930 as manufactures of metal not specially provided for. It is claimed that the articles are properly dutiable at but 27½ per centum ad valorem under paragraph 372 of said act as machines and parts thereof not specially provided for.

Exhibits 1 and 2 are samples of the imported air-pistols and Exhibit 3 of the so-called safety pistolets.

The witness, Stephen E. Laszlo, thus described the mechanism of the air-pistols:

Inside of this housing there is a plunger. On top of the plunger there is a piece of leather. This one moves inside of it, and compresses air. Behind this

[1] C. D. 47.

plunger there is a spring. On the side of this holder there is a lever which is here. Then I open the lever here. I compress the spring and then the position of the plunger changes. It moves from this position to this position.

Q. That is from the front, the muzzle, down to the breech; is that right?—A. That is correct. It moves back to the front. I compress the spring which is in front of it. That is a motion and it gets to a certain position to the end, in this position. There is a peculiar shape of metal which we call the trigger that hooks in the groove of this metal, this being a piece of small spring here holding it tight, with the result when I open this one it remains so, the spring being compressed and the plunger in this position is ready to be released. Then I close this one and then I pull this. I release this mechanism and pull back. When I pull this trigger, this still being in position, it moves rapidly to here so that it springs when the trigger is pressed.

He further testified that Exhibit 3 is an imitation revolver, except that the muzzle is solid so that a bullet can not pass through it; that the article is so manufactured that only blank cartridges may be used therein; that when the trigger is pulled back energy is stored in a small spring placed within the handle; that the article operates like a double-action revolver; that when the trigger is pulled the hammer is raised and then released so that the hammer hits the blank cartridge; that the resulting fumes come out on top; and that the article is used in theatricals and for starting purposes.

In support of their contention, counsel for the plaintiff cite four recent cases in which certain devices were held classifiable as machines not specially provided for, to wit: *United States* v. *Guth Stern & Co., Inc.*, 21 C. C. P. A. 246, T. D. 46777, involving certain devices for sharpening safety-razor blades; *United States* v. *Adlanco Industrial Products Corp.*, 21 C. C. P. A. 249, T. D. 46778, covering a mechanism known as a thermoflux which was designed to convert electric current into a current of extremely high frequency; *United States* v. *Endlein & Schmidt, United Hardware & Tool Co.*, 22 C. C. P. A. 108, T. D. 47082, involving hand counters or tallying registers; and *United States* v. *L. Oppleman, Inc.*, 25 C. C. P. A. 168, T. D. 49271, covering certain aneroid barometers. Counsel also cites our rulings in Abstracts 26349, 27530, and 28998, wherein we classified as machines not specially provided for certain hand stapling devices, hand stapling pliers, and hand spraying devices.

On the other hand, counsel for the Government calls our attention to the fact that in the case of *United States* v. *Guth Stern & Co., supra,* the appellate court disavowed its intention of holding arbitrarily that the definition of "machine" given in the case of *Simon, Buhler & Baumann, Inc.* v. *United States,* 8 Ct. Cust. Appls. 273, T. D. 37537, "is so rigid and exact in its terms as to include any and all devices and mechanisms that may happen to be literally embraced within it."

Counsel also cites the case of *United States* v. *Wm. Goldenblum & Co.*, 18 C. C. P. A. 367, T. D. 44616, wherein it was held that certain

carpenter's braces were tools and not machines, the court observing that "obviously, a holding that the involved articles are machines for tariff purposes would result in reducing the definition of machines to an absurdity."

However, we do not agree with Government counsel that holding the present articles to be machines would reduce that term to an absurdity. The record establishes that the articles are mechanical contrivances which utilize and apply the force of air.

But before classifying the articles as machines, it would seem that some consideration should be given the question whether the imported articles may not be specifically provided for in paragraph 366 of said act as pistols and revolvers. There appears to be nothing in that paragraph which in express terms would preclude the classification of these articles thereunder as pistols or revolvers. The articles represented by Exhibits 1 and 2 are invoiced as "air pistols" and are so designated by counsel for the plaintiff in their brief. The mere fact that they shoot bullets or pellets by the force of air instead of by explosion of gun powder would not necessarily make them any the less pistols. Also, the articles invoiced as pistolets resemble double action revolvers, except that they shoot blank cartridges, and they are admittedly used as revolvers on the stage and for starting races and the like.

As shedding some light upon the common meaning of the words "pistols" and "revolvers," we quote the following dictionary definitions:

*Pistol.* A short firearm intended to be aimed and fired from one hand. Pistols are now usually either *revolvers* (which see), or automatic, or semiautomatic, magazine pistols.

*Revolver.* n. 1. One that revolves, specif.: a. A firearm (commonly a pistol) with a cylinder of several chambers or, formerly, several barrels so arranged as to revolve on an axis, and be discharged in succession by the same lock. The commonest calibers are .38, .32, .22, and .35 inch.

*Firearm.* Any weapon from which a shot is discharged by an explosive, as gunpowder; usually applied only to small arms.

*Air gun.* A kind of gun in which the elastic force of condensed air is used to discharge the ball.—*Webster's New International Dictionary.*

*Pistol.* 1. A small fire-arm, with a more or less curved stock, adapted to be held in, and fired by, one hand.

*Revolver.* 1. A pistol provided with mechanism by which a set of loaded barrels, or (more usually) of cartridge-chambers, is revolved and presented in succession before the hammer, so as to admit of the rapid discharge of several shots without reloading.

*Air-Pistol.* One in which the propelling power is the explosive force of inflammable gases.

*Firearm.* A weapon from which missiles are propelled by the combustion of gunpowder or other explosive.—*Oxford Dictionary.*

*Pistol.* A firearm intended to be held in one hand when aimed and fired.

*Firearm.* A weapon from which a missile, such as a bullet, cannon-ball, shell, etc., is expelled by the combustion of gunpowder or other similar explosive.

*Air-Gun.* A gun in which condensed air is used as the propelling agent. The bore of the barrel is connected with a reservoir inclosed within or attached without the stock, into which air is forced by a piston or plunger fitted to the bore, or by an independent condenser. When the trigger is pulled it operates a valve which permits the sudden escape of the whole or of a portion of the condensed air into the barrel at the rear of the ball or dart, thus projecting the latter. In some forms the propelling agent is a compressed spring freed by the trigger. The reactive force of the spring compresses the air which interposes between it and the projectile, and the air acts upon and projects the ball.—*Century Dictionary.*

*Pistol.* A form of fire-arm adapted for use with one hand. The modern form of pistol is a breech-loader, using metallic cartridges.

*Revolver.* 1. (*Weapon*) A fire-arm having a revolving barrel or breech cylinder, so as to discharge several loads in quick succession without being reloaded.

*Air-gun.* The air-gun is a pneumatic engine for firing bullets or other projectiles by force of compressed air * * *. The usual range to which the air-gun propels a bullet is from sixty to eighty yards. In those guns having a sliding trigger, two or three bullets are successively and separately introduced, and may be expelled by one mass of condensed air. Air-guns have also been constructed upon the principle of revolving pistols, admitting the expulsion of several bullets after once charging with compressed air. * * *.—*Knight's American Mechanical Dictionary.*

Accompanying the latter text are illustrations of an air-gun which is similar in appearance to an ordinary revolver and a device described as an air-pistol.

From the above definitions it would appear that the air-pistols involved herein are not firearms, and therefore are not pistols within the common meaning of the term. They seem to belong to a separate category of articles which are defined as air-pistols and air-guns. On the other hand the so-called pistolets seem to answer the definitions of revolvers insofar as they are firearms; but they fail to meet the requirement of ejecting a projectile since they can only be used to fire blank cartridges.

Miniature breech-loading pistols, having a ring attached thereto for suspending them from watch chains, have been held by this court to be dutiable as jewelry, whereas miniature breech-loading guns, 5½ inches long, have been held to be properly dutiable as manufactures of metal not specially provided for. *Geo. Borgfeldt & Co.* v. *United States*, T. D. 24768, G. A. 5467, 6 Treas. Dec. 923.

Moreover, in the Tariff Act of 1922, the Congress placed air-rifles in paragraph 1414 of that act, which was the toy paragraph of that act, and they are also included in paragraph 1513, which is the toy paragraph of the Tariff Act of 1930.

Inasmuch as there is an *eo nomine* provision in paragraph 365 of the 1930 law for rifles, it seems apparent that the Congress did not intend to include therein the air-rifles mentioned in said paragraph 1513. We are of the opinion that similarly it was not the legislative purpose to include air-pistols in paragraph 366 of the 1930 act, which appears to be the firearms paragraph for pistols and revolvers.

For the above reasons we are satisfied that the air-pistols and so-called pistolets at bar are not *eo nomine* provided for in said paragraph 366, as might at first seem to be the case. But, as before stated, these articles apparently meet the requirements of the definition of what constitutes a machine as judicially interpreted in *Simon, Buhler & Baumann, Inc.* v. *United States*, 8 Ct. Cust. Appls. 273, T. D. 37537, to wit, a mechanical contrivance for utilizing, applying, or modifying energy or force, or for the transmission of motion. The claim of the plaintiff alleged under said paragraph 372 is therefore sustained; but as to all other merchandise the claims are overruled. Judgment will be rendered accordingly.