301

(C. D. 260)

L. Oppleman, Inc. *v.* United States

United States Customs Court, Second Division

(Decided December 6, 1939)

*Tompkins & Tompkins* (*Allerton deC. Tompkins* of counsel) for the plaintiff.
*Webster J. Oliver*, Assistant Attorney General (*Richard E. FitzGibbon*, special attorney), for the defendant.

Before Tilson, Kincheloe, and Dallinger, Judges

Dallinger, Judge: These are suits against the United States, arising at the port of New York, brought to recover certain customs duties alleged to have been improperly exacted on particular importations of so-called "charm pistols" and air pistols. Duty was levied thereon at the rate of 45 per centum ad valorem under paragraph 397 of the Tariff Act of 1930 as manufactures of metal not specially provided for. It is claimed that said articles are properly dutiable at the rate of 27½ per centum ad valorem under paragraph 372 of said act as machines not specially provided for.

Samples of the so-called "charm pistols" were admitted in evidence as Exhibits 1 and 2. In addition thereto the plaintiff offered in evidence the testimony of a single witness, Samuel Sanders. No testimony was introduced by the Government.

The witness testified that the articles described in the invoice covered by protest 952458–G as Diana air pistols model 5 cal. .177 and Diana air pistols model 5 cal. .22 are entirely different from those

represented by Exhibits 1 and 2 herein, said articles being large air pistols which are similar in all material respects to the merchandise covered by protest 928368–G. Whereupon, the record in the cited case was incorporated herein as to the merchandise covered by such invoiced items.

The witness then testified that the first item in the invoice covered by protest 964967–G herein represents a charm pistol which differs from Exhibit 1 in that it has an attachment which enables it to be worn on or about the person. Whereupon counsel for the plaintiff formally abandoned all claims in respect to that particular item.

The witness then described the operation of the charm pistols represented by Exhibits 1 and 2 as follows:

> The pistol is cocked, the barrel is opened down, and a cartridge is placed on the inside with a pin in it. The cartridge is so constructed that, when the hammer strikes on top of the pin, it will explode.

The witness then proceeded to testify as follows:

> By Mr. TOMPKINS:
> Q. When you pull or press the trigger, how many different operations are there in connection with that pistol?—A. Three.
> Q. What are they?—A. There is the action of one end, as the sear; there is the action to raise the spring, and there is the action of the top spring which throws down the hammer with the force.
>
>    *     *     *     *     *     *     *
>
> Q. Will you kindly state what motion is transmitted when that trigger is pulled?
>
>    *     *     *     *     *     *     *
>
> The WITNESS: When the trigger is pulled, the tripping of the hammer transmits the motion of the lower part of the spring to the upper part, which in turn applies the pressure to the hammer, causing it to strike the cartridge.

Upon this record counsel for the plaintiff in their brief filed herein seriously contend that these so-called "charm pistols" constituting the imported merchandise at bar are machines not specially provided for within the meaning of paragraph 372 of the Tariff Act of 1930, and cite numerous decisions of this court and the Court of Customs and Patent Appeals in an effort to sustain their contention. They particularly stress our recent decision in *S. E. Laszlo* v. *United States,* C. D. 47, 1 Cust. Ct. 209, in which this court held certain air pistols and blank cartridge pistols to be dutiable as machines not specially provided for under paragraph 372 of the Tariff Act of 1930.

In that case, however, the merchandise could be and was employed as useful pistols and was commercially bought and sold as such. While it is true that the present miniature pistols are in a sense mechanical contrivances which utilize energy or force, nevertheless in our opinion it never was the intention of the Congress to have such articles classified as machines. The very fact that these are called "charm pistols." is indicative of the use for which they were plainly intended.

In the case of *S. E. Laszlo* v. *United States, supra,* we said:

Miniature breech-loading pistols, having a ring attached thereto for suspending them from watch chains, have been held by this court to be dutiable as jewelry, whereas miniature breech-loading guns, 5½ inches long, have been held to be properly dutiable as manufactures of metal not specially provided for. *Geo. Borgfeldt & Co.* v. *United States,* T. D. 24768, G. A. 5467, 6 Treas. Dec. 923.

It is very significant that counsel for the plaintiff in open court waived all claim to similar charm pistols covered by protest 964967–G, which had an attachment by which they may be worn on or about the person. In our opinion the presence or absence of such an attachment does not materially alter the character of the merchandise.

In the case of *F. F. G. Harper Co.* v. *United States,* T. D. 46423, 63 Treas. Dec. 948, this court had before it substantial and well-made metal parts intended to be assembled with other parts after importation into working models of steam engines, locomotives, etc. They were assessed for duty at the rate of 70 per centum ad valorem under paragraph 1513 of the Tariff Act of 1930 as toys. They were claimed, among other things, to be properly dutiable at 15 per centum ad valorem under paragraph 372 of said act as parts of reciprocating steam engines, or at 27½ per centum ad valorem under said paragraph as parts of machines not specially provided for.

In holding said merchandise to be properly dutiable at the rate of 45 per centum ad valorem under paragraph 397 of the Tariff Act of 1930 as manufactures of metal not specially provided for, the court said:

\* \* \* As to the claims that they are dutiable as parts of reciprocating steam engines at 15 per centum ad valorem or as parts of "all other machines, \* \* \* not specially provided for," at 27½ per centum ad valorem under paragraph 372: We are of opinion that these articles are not dutiable under these provisions for the reason they are not suitable for practical commercial use. The engines of which they are parts when assembled have not been shown to have any practical commercial use. They appear to be mere show, museum, or exhibition pieces, and to be without any practical purpose, \* \* \*.

That decision appears to be grounded in common sense and we regard it as controlling the classification of the present so-called "charm" pistols, which we hold to be properly dutiable at the rate of 45 per centum ad valorem under said paragraph 397 as manufactures of metal not specially provided for, as classified by the collector. But as to the particular articles covered by protest 952458–G and invoiced as Diana air pistols model 5 cal. .177 and Diana air pistols model 5 cal. .22, we follow our decision in *L. Oppleman Inc.* v. *United States,* Abstract 42471, and hold said pistols to be properly dutiable at the rate of 27½ per centum ad valorem under said paragraph 372 as machines not specially provided for, as alleged by the plaintiff. That claim as to these particular pistols is therefore sustained, but as to all other merchandise the claims are overruled. Judgment will be rendered accordingly.