(C. D. 1145)

F. W. MYERS & Co., INC. *v.* UNITED STATES

United States Customs Court, Second Division

(Decided December 9, 1948)

*Breed, Abbott & Morgan* (*Frederick H. Bruenner* of counsel) for the plaintiff. *David N. Edelstein*, Assistant Attorney General (*Arthur R. Martoccia* and *Charles J. Miville*, special attorneys), for the defendant.

Before LAWRENCE and TILSON, Judges; RAO, J., not participating

LAWRENCE, Judge: This cause of action has been submitted to us for determination upon a statement of facts agreed to by the parties herein, the two protests having been consolidated for trial.

The commodity under consideration was imported from Canada and is described on the invoices as " 'Cash X' Captive Bolt Humane Cattle Killer," together with certain parts thereof.

The collector of customs classified the merchandise as "pistols," and as parts thereof, as provided in paragraph 366 of the Tariff Act of 1930, and imposed duty on the pistols at the rate of $3.50 each, and on the parts at 50 per centum ad valorem, plus 55 per centum ad valorem in each instance.

Plaintiff claims that the articles, together with their parts, should be classified as machines and parts thereof, not specially provided for, and subjected to duty at the rate of 15 per centum ad valorem, which is the rate provided in paragraph 372 of said act, as modified by the trade agreement between the United States and several foreign countries (including Canada), effective January 1, 1948, 82 Treas. Dec. 305, T. D. 51802.

The protests as originally submitted contained an alternative claim but since the submission of this case plaintiff has filed with the court a communication limiting its claim specifically to said paragraph 372.

A description of the physical appearance, use of the device in controversy, and the method of operation is so well-outlined in the agreed statement of facts that we quote therefrom as follows:

The Cash X Captive Bolt Humane Cattle Killer * * * is a mechanical pole-axe for the humane slaughtering of cattle and other animals. Its operation may be briefly described as follows:

A cylinder and firing chamber are attached to a wooden stock in a shape similar to that of an ordinary pistol. The cylinder contains a steel rod or bolt which is shaped in the form of a pole-axe spike at the open end of the cylinder and in the form of a piston-head at the firing chamber end of the cylinder.

The bolt is operated by the force of the explosion of a blank cartridge in the firing chamber, driving the piston-head of the bolt forward and causing the contiguous pole-axe part of the bolt to protrude from the open end of the cylinder a distance of 2½ to 3 inches. During the forward motion of the bolt its piston-head compresses the air in the forward end of the cylinder against a collar which surrounds the smaller circumference at the pole-axe end of the bolt, thereby

limiting the distance which the pole-axe part of the bolt can emerge from the mouth of the cylinder to 3 inches. When the bolt is at the end of its limited forward motion, the air, thus compressed between the piston-head of the bolt and the collar at the forward end of the cylinder, returns the bolt instantly and automatically, by pressure opposite to that produced by the explosion in the firing chamber, to its retracted or normal position completely inside the cylinder.

Only blank cartridges may be used in the firing chamber as the cylinder is completely filled with the bolt. The restricted and predetermined forward movement of the bolt, because of the position of the collar at the forward end of the cylinder and the action of compressed air between the piston-head of the bolt and the collar, makes it impossible for the bolt to leave the cylinder.

In addition to what is contained in the above description, it may be pointed out that a physical examination of the cross-section model of a "Cash X" captive bolt humane cattle killer, in evidence as exhibit B, discloses the presence of two coil springs, one of which controls the trigger, the other the hammer.

While the articles in controversy would seem to fall within the tariff designation of machines, as judicially defined, we shall devote our attention first to the contention that they are not "pistols" in a tariff sense, for if they fall within both designations the provision for pistols would be the more specific.

The statutory provision adopted by the collector of customs in classifying the present importation reads as follows:

Par. 366. Pistols and revolvers: Automatic, single-shot, magazine, or revolving, valued at not more than $4 each, $2 each; valued at more than $4 and not more than $8 each, $2.50 each; valued at more than $8 each, $3.50 each; parts thereof and fittings therefor, 50 per centum ad valorem; and in addition thereto, on all the foregoing, 55 per centum ad valorem.

Both of the parties rely in part upon the decision of this court in *S. E. Laszlo* v. *United States*, 1 Cust. Ct. 209, C. D. 47. It is cited by the plaintiff in support of its contention that the articles are not pistols, as classified by the collector. Defendant relies upon it to sustain the collector's classification. Although classification of the articles there in controversy in paragraph 366 of the Tariff Act of 1930 was not invoked by the pleadings in that case, the court, nevertheless, gave serious consideration to the possibility of the articles being within the scope of that paragraph. Its reasoning in that case in rejecting classification of the air-pistols and so-called blank pistols there in issue as pistols in paragraph 366, *supra*, while in the nature of judicial dictum, has its appropriate application here. The court was of the opinion that a "pistol" is a species of the genus "firearm," and referred to the following definitions of the word "firearm"—

*Firearm.* Any weapon from which a shot is discharged by an explosive, as gunpowder; usually applied only to small arms.—*Webster's New International Dictionary.*

*Firearm.* A weapon from which missiles are propelled by the combustion of gunpowder or other explosive.—*Oxford Dictionary.*

*Firearm.* A weapon from which a missile, such as a bullet, cannon-ball, shell, etc., is expelled by the combustion of gunpowder or other similar explosive.— *Century Dictionary.*

The court concluded that air-pistols should not be classified as pistols since they did not utilize gunpowder or similar explosives. With regard to the pistolets or blank pistols, the court was of the opinion that they came within the first test of the common meaning of a pistol, inasmuch as they fired blank cartridges of gunpowder, but that they did not "meet the [second] requirement of ejecting a projectile."

Webster's New International Dictionary, unabridged, defines "projectile" as follows:

*Projectile, n.* A body projected by exterior force, and continuing in motion by its own inertia; specif., a missile for a firearm or cannon.

It seems obvious from the description of the article here in controversy that it is not a firearm within the meaning of that term for the reason that it does not eject a missile or projectile, as those terms are commonly understood.

Plaintiff also cites several other decisions of this court upon related subjects where the competition was between the provision for machines in paragraph 372, *supra,* and paragraph 397 of said act providing for articles not specially provided for, in chief value of metal. We deem it unnecessary to discuss those cases here.

Having reached the conclusion that the articles in dispute are not pistols, as classified by the collector, we now turn to the claim of the plaintiff that they are machines, not specially provided for, under paragraph 372, as modified, *supra.* Upon this phase of the case, plaintiff relies upon the settled doctrine announced in *Simon, Buhler & Baumann (Inc.)* v. *United States,* 8 Ct. Cust. Appls. 273, T. D. 37537, which was followed in a number of other cases cited by plaintiff, to which we also add the *Laszlo* case, *supra.*

The definition of a machine as "a mechanical contrivance for utilizing, applying, or modifying energy or force or for the transmission of motion," which was stated by our appellate court in the *Simon, Buhler & Baumann (Inc.)* case, *supra,* and which has been approved and applied in so many subsequent cases, lends itself with appropriate force here. The description of the device here in controversy, which we quoted earlier in this opinion, leaves no room to doubt that in its operation it utilizes, applies, or modifies energy or force or transmits motion, within the principle laid down in the *Simon* case, *supra,* and numerous others which followed it.

We accordingly hold that the " 'Cash X' Captive Bolt Humane Cattle Killer" is not a pistol within the scope of paragraph 366, *supra,* but that it is a machine, not specially provided for, and entitled to

classification as such under the provisions of paragraph 372 of the Tariff Act of 1930, as modified by the trade agreement, *supra*, and dutiable at 15 per centum ad valorem.

Inasmuch as said paragraph 372, as modified, provides that "Parts, not specially provided for   *   *   *   of articles provided for in any item 372," other than textile pins, shall be subject to the "same rate of duty as the articles of which they are parts," we hold that the articles shown on entries B–1162 and B–1167 covered by protest 138182–K which were classified by the collector of customs as parts of pistols under paragraph 366, *supra*, and assessed with duty at 105 per centum ad valorem, are dutiable at 15 per centum ad valorem in said paragraph 372, as modified.

In harmony with the views expressed herein, we sustain the claim of plaintiff for classification of "Cash X" captive bolt humane cattle killers and parts thereof in paragraph 372 of the Tariff Act of 1930, as modified, *supra*.   Therefore, as to the merchandise above described, the decision of the collector of customs is reversed.

Judgment will be entered accordingly.