(C.D. 2543)

LANVIN PARFUMS, INC. *v.* UNITED STATES

United States Customs Court, Second Division

(Decided June 8, 1965)

*Siegel, Mandell & Davidson* (*Allan H. Kamnitz* and *David Serko* of counsel) for the plaintiff.

*John W. Douglas*, Assistant Attorney General (*James F. O'Hara, Richard J. Kaplan*, and *Arthur H. Steinberg*, trial attorneys), for the defendant.

Before RAO and FORD, Judges

RAO, Judge: Certain merchandise described as atomizers or atomizer tops was classified by the collector of customs as articles or wares, not specially provided for, composed in chief value of aluminum, in paragraph 397 of the Tariff Act of 1930 (19 U.S.C. § 1001, par. 397), as modified by the Sixth Protocol of Supplementary Concessions to the General Agreement on Tariffs and Trade, 91 Treas. Dec. 150, T.D. 54108, and duty was imposed thereon at the rate of 19 per centum ad valorem.

Various claims for lower rates of duty have been made in the protest or by amendment thereto. The one relied upon is that said articles should properly have been classified as machines, not specially provided for, in paragraph 372 of said act (19 U.S.C. § 1001, par. 372), as modified, *supra*, and subjected to duty at the rate of 12 per centum or 11½ per centum ad valorem. All other claims have been abandoned and will be dismissed.

The record upon which a determination of the instant case must rest consists of the testimony of two witnesses who appeared on behalf of plaintiff, the actual importer, and four exhibits. Exhibits received on behalf of plaintiff consist of the following:

Exhibit 1—a representative sample of the atomizers in issue.

Illustrative exhibit 2—a cross-sectional diagram of a representative atomizer showing the various parts thereof.

Illustrative exhibit 3—an atomizer which had been disassembled by plaintiff's witness Elowsky.

As defendant's exhibit A, there was received in evidence a bulb-type atomizer, consisting of a long plastic tube, a metal cap, and a rubber bulb.

Lawrence Elowsky, graduate engineer with a professional engineer's license and an executive with the United Spring Corp. doing design and executive work, was called upon to point out the different parts of the atomizers in controversy and to identify them on illustrative exhibit 2 with letters of the alphabet, with the following results:

A—represents the cylinder or case of the atomizer.
B—the piston which slides in the cylinder.
C—a cone-type compressor.
D—the wick and washer which form a seal at the bottom of the cylinder.
E—a spacer washer.
F—two rubber seals.
G—the orifice.
H—a metal washer.
I—the stem.
Valve, consisting of F, H, I, and a screw.

Witness Elowsky described the operation of the atomizer as follows. The atomizer, attached to a bottle having a mating thread and containing perfume or other liquid, is held in an inverted position. When the piston is depressed, the rubber seals allow fluid to enter the chamber, and the spring pulls the piston back into its normal position. When the piston is again depressed, a mixture of liquid and air is expelled through the orifice at a high speed. The increase in pressure at this point is in the neighborhood of 400 times. The increased velocity allows the liquid to be broken into minute particles and effects an atomization of the liquid in the container as it is expelled through the orifice. Due to the bell shape of the atomizer wall, a wide dispersion of the liquid and air is obtained.

In the opinion of Witness Elowsky, the functioning in combination of parts A through I, indicated on plaintiff's illustrative exhibit 2, constitutes the atomizer in controversy, a device which utilizes, applies, or modifies energy or force in that it takes low pressure and low velocity from a human hand and changes it to a very high velocity in the atomization of the mixture of liquid and air through the orifice.

Elowsky stated that the spring, in addition to returning the piston to its original position, serves to hold the valve mechanism in place, enabling the valve to open.

Leon Schulman, administrative vice president and treasurer of Lanvin Parfums, Inc., was plaintiff's second witness. He has been associated with the Lanvin company for 8½ years directly, and, prior thereto, indirectly as a certified public accountant servicing the company. He stated that he supervises the blending and packaging of his company's products. Schulman is familiar with exhibit 1, by virtue of the fact that it is part of a package which contains a 1-ounce bottle of perfume and an atomizer which were packaged under his company's direction in France and imported into and distributed in

the United States. He explained the atomizer is affixed to a cylinder or bottle, the bottle and atomizer are inverted, a button is pressed, and as it is depressed you get an atomization of the liquid in the container.

Schulman is familiar with the bulb-type atomizer consisting of a cap and long tube, such as is represented by defendant's exhibit A. One of the great advantages of an atomizer represented by exhibit 1 is that when the atomizer is not in use the bottle is sealed and air is kept from coming through the system, thereby maintaining the quality of the material in the bottle by not allowing air to flow continuously through the system to contaminate or oxidize the perfume or whatever other material might be in the container.

What is or what is not a machine has been the subject of litigation before this court on numerous occasions. Reference has been made by plaintiff to the following cases wherein mechanisms have been classified within the provision for machines, not specially provided for, in paragraph 372 of the tariff act. *The Durst Mfg. Co., Inc.* v. *United States*, 50 CCPA 56, C.A.D. 820, rotary lawn sprinkler tops; *Nord Light, Inc.* v. *United States*, 49 CCPA 12, C.A.D. 786, light fixture pulleys; *United States* v. *IDL Mfg. & Sales Corp.*, 48 CCPA 17, C.A.D. 756, hand-operated paper punches.

The defendant, on the other hand, calls attention to the following cases which held certain articles not to be machines, as claimed. *United States* v. *Wm. Goldenblum & Co.*, 18 CCPA 367, T.D. 44616, carpenters' braces for turning boring bits; *H. E. Werner* v. *United States*, 49 Cust. Ct. 257, Abstract 67118, floor polishing brush device; *A. B. Coppersmith and J. S. Walker* v. *United States*, 43 Cust. Ct. 312, Abstract 63284, trip lever wastes, devices for restricting the flow of water from bathtubs; *United Merchandising Corp. and Frank P. Dow Co., Inc.* v. *United States*, 42 Cust. Ct. 396, Abstract 63100, hand-operated air pumps used for inflating air mattresses, and so forth; *General Systems Service, Inc.* v. *United States*, 39 Cust. Ct. 506, Abstract 61376, looseleaf book binders; *L. Oppleman, Inc.* v. *United States*, 3 Cust. Ct. 301, C.D. 260, so-called "charm" pistols.

All cases cited by the parties have been reviewed and given due consideration in arriving at the conclusion herein reached.

Among the most recent cases on the subject of what constitutes a machine is *Nord Light, supra*. Involved therein was the proper status for customs classification purposes of certain light fixture pulleys, which had been classified by the collector of customs as articles or wares, not specially provided for, composed wholly or in chief value of base metal, in paragraph 397 of the Tariff Act of 1930, as modified. Said classification, which was sustained by the trial court, was reversed on appeal. In the course of its decision on review, our appellate court stated as follows:

This court had occasion in *United States* v. *IDL Mfg. & Sales Corp.*, 48 CCPA 17, C.A.D. 756, to review numerous prior decisions dealing with the competing paragraphs here in issue. From this review we concluded:

> While many items have been held to be, or not to be, "machines," there is no "judicial determination" of what a machine is. It remains simply a question of common meaning and each case must be decided on the basis of its own facts, technical and legislative.

Further, the court stated:

> A common meaning of the word "machine," found in the dictionaries which we referred to in the *IDL* case, supra, is a *device which may be either simple or complex, whose function is to increase the intensity of an applied force*, or to change its direction, or to change one form of motion or energy into another form. Cf. The Columbia Encyclopedia, 2d Ed.   [Italics supplied.]

In the light of the forgoing holding and the reasoning in support thereof, we are led to the conclusion in the instant case that since the atomizers herein involved, although simple in design and operation, increase the intensity of an applied force, the hand power applied to the piston of the atomizer resulting in a magnification of that power 400 times in the propulsion of perfume in an atomized form, said devices come within the common meaning of the word "machine" and should find classification as such within the purview of paragraph 372 of the Tariff Act of 1930, as modified, *supra*, and subject to duty at the rate of 12 per centum or 11½ per centum ad valorem, as urged by plaintiff herein.

We consider as untenable the contention of defendant herein that the imported articles "standing alone" can not perform their intended function. In this regard, we believe the atomizers in controversy to be just as much machines in themselves and capable of performing the function for which they were designed as were the pulleys in the *Nord Light* case, *supra*, which, when in use, were attached by a cable to a suspended object, and the rotary lawn sprinklers in *The Durst* case, *supra*, which, to fulfill their purpose, must be attached to lengths of hose and water pressure applied.

Judgment will issue in accordance with the views above expressed.