**AMERICAN WEAPONS CORP. et al.,**
**Plaintiffs,**

v.

**UNITED STATES, Defendant.**
**Protests 64/2825(A)–72295, etc.;**
**C.D. 3297.**

United States Customs Court
Second Division.
Feb. 20, 1968.

Glad & Tuttle, San Francisco, Cal.
(Edward N. Glad, San Francisco, Cal.,
of counsel), for plaintiffs.

Edwin L. Weisl, Jr., Asst. Atty. Gen.
(Harold L. Grossman, New York City,
trial attorney), for defendant.

Before RAO and FORD, Judges.

RAO, Chief Judge:

The above-enumerated protest and six
others listed in the schedule attached
hereto, which were consolidated for purpose of trial and decision, present for the
court's determination the proper classification for customs duty purposes of merchandise described on the invoices with
the entries accompanying said protests
as various kinds of pistols and revolvers.
The items may be described as follows:

| Protest No. | Entry No. | Item Description |
|---|---|---|
| 64/2825(A) | 19888 | Frontier-six-shooter Revolvers, Caliber .22 with blind barrels |
| 64/1017(B) | 9922 | Stevens pistol blanks, cal. 22 |
| 64/1017(C) | 4742 | Stevens pistol blanks, cal. 22 |
| 64/1047(A) | 200486 | Derringer alarm pistols blanks |
| 63/23121(A) | 1793 | Blank alarm pistols |
| 64/15313 | 3775 | Stevens model antique pistols .22 cal. |
| 64/14326 | 3456 | Derringer alarm pistols |

Upon importation, the customs officials
classified the involved articles within the
tariff provision for pistols and revolvers
in paragraph 366 of the Tariff Act of
1930, or as modified by the Sixth Protocol of Supplementary Concessions to the
General Agreement on Tariffs and Trade,
91 Treas.Dec. 150, T.D. 54108, and imposed duty thereon according to value
either at $2 each, plus 55 per centum ad
valorem, or at $1.35 each, plus 30 per
centum ad valorem.

Plaintiffs controvert said classification
and duty assessment contending that the
imported merchandise should properly

have been classified as machines, not specially provided for, in paragraph 372 of said tariff act, as modified by Presidential proclamation, 97 Treas.Dec. 157, T.D. 55615, supplemented by Presidential proclamation, 97 Treas.Dec. 430, T.D. 55649, and subjected to duty at the rate of only 10½% per centum ad valorem.[1]

The language of the competing tariff provisions reads as follows:

Paragraph 366, Tariff Act of 1930:

Pistols and revolvers: Automatic, single-shot, magazine, or revolving, valued at not more than $4 each, $2 each; * * *; and in addition thereto, on all the foregoing, 55 per centum ad valorem.

Paragraph 366, as modified by T.D. 54108:

Pistols and revolvers: Automatic, single-shot, magazine, or revolving, valued over $4 but not over $8 each .......................... $1.35 each and 30% ad val.

Paragraph 372 of the Tariff Act of 1930, as modified by T.D. 55615 and T.D. 55649:

Machines, finished or unfinished, not specially provided for:

  *   *   *   *   *   *   *   *

Other (except  *  *  *)  ..... 10½% ad val.

---

Heywood Hunter, president of the American Weapons Corp. and of Crown International Firearms, Inc., plaintiffs herein, was the only witness called to testify. He described the business of the plaintiffs' corporations with which he has been connected for the past 10 years as the buying and selling of firearms and other related objects and stated that the basic part of said business has to do with facsimiles of old and antique weapons. The witness has been in the gun business since 1949. In his present capacity, he travels throughout the world visiting various factories to see what they are producing and if he could adapt any of his ideas to theirs or possibly to purchase items that they have for sale.

Two exhibits identified by this witness were received in evidence as plaintiffs' exhibits 1 and 2. Exhibit 1, stated to be representative of the merchandise covered by protests 64/15313, 64/1017(B), and 64/1017(C), was described by Witness Hunter as a replica of a Stevens pistol made in the latter 1800's, except that the barrel incorporated therewith was solid or "blank." Exhibit 2 is a Derringer alarm pistol of the kind covered by protests 64/14326 and 64/1047 (A). While no physical exhibits of the merchandise covered by the remaining two protests were offered in evidence, Hunter stated that the merchandise covered by protest 64/2825(A) consisted of six-shooter revolvers with blank barrels, and that the so-called "blank alarm pistols" covered by protest 63/23121(A), although differing in style from the pistols represented by exhibits 1 and 2, were the same insofar as they were imported with blank barrels.

The pistols represented by exhibits 1 and 2 were manufactured with "gas holes." Although live ammunition could not be used with the pistols or revolvers in controversy, Hunter stated that the articles at bar, in their condition as

---

1. It is noted that the claimed rate insofar as it relates to protest 64/15313 appears to be inapplicable.

imported, would take some blank cartridges. Whereas the articles in issue were not designed for the purposes of a starter pistol, they would react in the same manner, and, if the pistols were fired with a blank cartridge, some gas would be emitted through the gas holes or vents.

Hunter stated that, because of the solid or blank barrels, it would be impossible to fire a projectile or any fixed ammunition with any of the items imported under the consolidated protests.

The witness testified that exhibits 1 and 2 modify, transfer, and apply force or energy and they, and the other items presently in controversy, have moving parts, namely, a hammer, trigger, and various springs within the pistol and revolver frames.

In support of the contention that the articles at bar are not within the scope of the provision for pistols and revolvers in paragraph 366 of the Tariff Act of 1930, or as modified, plaintiffs in their brief rely on the case of S. E. Laszlo v. United States, 1 Cust.Ct. 209, C.D. 47, particularly insofar as it related to "pistolets," and the case of F. W. Myers & Co., Inc. v. United States, 21 Cust.Ct. 145, C.D. 1145, and endeavor to distinguish the holding of the Court of Customs and Patent Appeals in United States v. Madison Import Corp., 49 CCPA 49, C.A.D. 795.

In the Laszlo case, supra, a so-called safety pistolet, a sample of which was received in evidence, was described as an imitation revolver with a solid muzzle so that a bullet could not pass through it, but said revolver was so manufactured that blank cartridges might be used therein. Pistolets were admittedly used as revolvers on the stage and for starting races. This court, in sustaining plaintiff's claim therein that the pistolets were machines, not specially provided for, in paragraph 372 of the Tariff Act of 1930 rather than as articles or wares, composed of base metal, not specially provided for, in paragraph 397 of said act as classified, took occasion to explore other possible more specific classifica-

tions for said articles. In arriving at the conclusion that the pistolets were not within the eo nomine provision for pistols and revolvers in paragraph 366 of the tariff act, the court made the following comment:

> * * * the so-called pistolets seem to answer the definitions of revolvers insofar as they are firearms; but they fail to meet the requirement of ejecting a projectile since they can only be used to fire blank cartridges.

The Myers case, supra, as in the present controversy, placed in direct opposition the provision in paragraph 366 of the Tariff Act of 1930 for pistols with the provision in paragraph 372 of said act for machines, not specially provided for. The subject merchandise in the Myers case was a "Cash X" captive bolt humane cattle killer, which in appearance was similar to an ordinary pistol. It was used for the humane slaughtering of cattle and other animals. The sliding pole-axed rod or captive bolt, operated by the force of a blank cartridge in the firing chamber, was projected up to 3 inches from the mouth of the cylinder but never left the cylinder due to a collar at the forward end thereof and the action of compressed air which caused the bolt to retract. This court, in overruling the classification of the merchandise within the provision for pistols in paragraph 366, stated:

> It seems obvious from the description of the article here in controversy that it is not a firearm within the meaning of that term for the reason that it does not eject a missile or projectile, as those terms are commonly understood.

Subsequently in the case of Madison Import Corp. v. United States, 46 Cust. Ct. 63, C.D. 2234, this court was again called upon to resolve a contest between the provisions of pargaraph 366 and paragraph 372 of the tariff act, pistols versus machines. So-called starter pistols, which employed blank cartridges and were used principally at sporting events but also to some extent by magicians and for theatrical purposes, com-

prised the subject merchandise. This court, following the rationale of its decisions in the *Laszlo* and *Myers* cases, supra, held that, inasmuch as the starter pistols could not fire or eject a missile or projectile, said articles could not find classification within the *eo nomine* provision for pistols in paragraph 366 of the Tariff Act of 1930.

An appeal taken in the *Madison Import* case, supra, reported as above noted in 49 CCPA 49, C.A.D. 795, resulted in a reversal of the decision below. A petition for a rehearing and for a reconsideration of said decision was denied on May 4, 1962.

The decision on appeal in the *Madison* case, though not in so many words rejecting the *sine qua non* of the *Laszlo* and *Myers* cases of propulsion or ejection of a projectile for classification in paragraph 366 of the tariff act, in effect clearly so held in the following language:

> Par. 366 of the Tariff Act of 1930, supra, is an *eo nomine* provision covering "Pistols and revolvers" without limitation as to whether they are capable of firing standard ammunition. This case is therefore controlled by the well established rule that an *eo nomine* designation, without limitation, includes all forms of the article. U. S. v. National Carloading Corp. et al., 48 CCPA 70, C.A.D. 767 and cases there cited. Pistols for shooting blank cartridges are recognized as but a special type of pistol.

> Congress provided no exceptions to par. 366, supra, based on the ability of the "Pistols and revolvers" to utilize standard sizes of ammunition to discharge a shot or propel a missile therefrom, and we think the collector properly classified the imported merchandise thereunder.

The unequivocal holding of the Court of Customs and Patent Appeals in the *Madison* case leads us to the conclusion to be reached in the present case. We have a similar competition between the statutory provisions for pistols and revolvers, as opposed to machines not specially provided for. The articles of merchandise presently at bar appear to be similar to the pistolets in the *Laszlo* case and the starter pistols in the *Madison* case, supra. The pistols and revolvers in issue are recognizable as such by visual examination, are of substantial construction and good quality, and are referred to in the record as facsimiles or replicas of old or antique weapons. It follows, therefore, that the articles in controversy come within the *eo nomine* provision for pistols and revolvers in paragraph 366 of the Tariff Act of 1930, or as modified by the sixth protocol, supra, following the well-established rule applied in the *Madison* case, supra, that "an *eo nomine* designation, without limitation, includes all forms of the article."

Predicated on the foregoing considerations, we find and hold that all claims in the protests enumerated in the schedule attached hereto must be overruled. Judgment will issue accordingly.

FORD, J., concurs.