The protest is overruled, and judgment will be entered accordingly.

(C.D. 4784)

APF Electronics Inc. *v.* United States

Court No. 77-7-01140

(Decided January 17, 1979)

*Sharretts, Paley, Carter* and *Blauvelt* (*Peter Jay Baskin* and *Raymond F. Sullivan, Jr.,* of counsel) for the plaintiff.

*Barbara Allen Babcock,* Assistant Attorney General (*David M. Cohen,* Chief, Customs Section; *Susan C. Cassell,* trial attorney), for the defendant.

Maletz, Judge: This case involves the proper tariff classification of merchandise invoiced as "T.V. Games" that was exported from Japan and entered at the port of Chicago in 1976. The merchandise was classified by Customs under item 735.20 of the Tariff Schedules of the United States (TSUS), as modified by T.D. 68-9, as game

equipment not specially provided for and assessed duty at the rate of 10 percent ad valorem.

Plaintiff's principal claim is that the merchandise is properly classifiable under item 734.20, TSUS, as modified by T.D. 68–9, as game machines, dutiable at the rate of 5.5 percent ad valorem.[1]

The pertinent provisions of TSUS read as follows:

*Classified under:*

| | Schedule 7, Part 5, Subpart D: | |
|---|---|---|
| 735.20 | Puzzles; game, sport, gymnastic, athletic, or playground equipment; all the foregoing, and parts thereof, not specially provided for_____ | 10% ad val. |

*Claimed under:*

| | Schedule 7, Part 5, Subpart D: | |
|---|---|---|
| 734.20 | Game machines, including coin or disc operated game machines and including games having mechanical controls for manipulating the action, and parts thereof_____ | 5.5% ad val. |

*Alternative claim:*

| | Schedule 6, Part 5: | |
|---|---|---|
| 688.40 | Electrical articles, and electrical parts of articles, not specially provided for_____ | 5.5% ad val. |

## The Record

The record in this case consists of a stipulation of facts and four joint exhibits. The stipulation is as follows:

1. The accompanying samples are representative of the imported merchandise. Model 401 is representative of those described on the invoices as model 401 and 401(A) and model 444 is representative of those described on the invoices as model 401(D).

2. The subject merchandise is imported with an owner's manual, containing written game description and objectives, one of which states that the first player and/or team to score fifteen (15) points wins the game.

3. In order to be used for its intended purpose, the imported merchandise is intended to be and is used by connecting it to a standard television set.

---

[1] Plaintiff alternatively claims the imported merchandise is classifiable (1) under item 734.20 as parts of game machines; or (2) under item 734.20 as games having mechanical controls for manipulating the action, or parts thereof; or (3) under item 688.40, as modified by T.D. 68–9, as electrical articles not specially provided for, dutiable at the rate of 5.5 percent ad valorem.

In addition, plaintiff moves in its brief to amend the complaint to include a claim under item 685.20, as modified by T.D. 68–9, for classification of the merchandise as television transmission and reception apparatus, dutiable at the rate of 5 percent ad valorem. However, as set out below, this case has been submitted on an agreed statement of facts. In that circumstance, it would be manifestly prejudicial to the defendant and contrary to rule 4.8(b) to allow such amendment.

4. When connected to a television set, the imported merchandise described as model 401 and 401(A) on the invoices can be used by one or two persons and the model 401(D) can be used by one to four persons.

Model 401 is illustrated in the Owner's Manual (joint exhibit 2(B)) as follows:

### TV FUN MODEL NO. 401

Control Unit    FIG. 1    Switch Box

Model 444 is illustrated in the Owner's Manual (joint exhibit 3(B)) as follows:

### TV FUN MODEL NO. 444

Control Unit    Switch Box

FIG. 1

5. When the imported merchandise is connected to a television and used by one person, the person's object is to exercise or demonstrate skill or adeptness. When the imported merchandise is used by more than one person, the object is to win the game.

6. When connected to a television, the imported merchandise transmits an electrical impulse to the television which, in conjunction with the electronic circuitry of the television causes an image or images to appear on the television screen.

7. Movement of a mechanical control on the imported merchandise operates to change the electrical impulse within the imported merchandise which controls the up and down movement of the paddle or bat function. When connected to a television set, this paddle or bat function becomes visible.

8. Movement of a mechanical control on the imported merchandise operates to change the electrical impulse within the imported merchandise which controls the speed function of the ball. When connected to a television set this speed function becomes visible.

9. Movement of a mechanical control on the imported merchandise operates to change the electrical impulse within the imported merchandise which controls the size of the paddle or bat function. When connected to a television set, this size change function becomes visible.

10. Movement of a mechanical control on the imported merchandise operates to change the electrical impulse within the imported merchandise which controls the angle of ball function. When connected to a television set, this angle of ball function becomes visible.

11. The imported merchandise has within it a self-contained audio portion which produces and transmits sounds intended to function as part of the game system; this audio portion remains unaffected by connection to a television set.

The four joint exhibits are:

Joint exhibit 1—a Quasar black and white TV set;

Joint exhibit 2(A)—a sample of the importation (model 401);

Joint exhibit 2(B)—an owner's manual for model 401;

Joint exhibit 3(A)—a sample of the importation (model 444);

Joint exhibit 3(B)—an owner's manual for model 444;

Joint exhibit 4—an adaptor.

The imported articles operate on six C cell batteries or from a.c. house current through use of an a.c. adaptor/battery eliminator.

## The Law

Against this background, plaintiff argues that the imported merchandise is within the common meaning of the term "game" by virtue of the uncontested facts; and that the merchandise is within the com-

mon meaning of the term "machine." Hence, plaintiff claims that the importations are properly classifiable as "game machines" within the meaning of item 734.20. Defendant, on the other hand, contends that the imported merchandise is not a game machine because (1) in its condition as imported, it is not capable of performing any game function and (2) it is not a "machine." For the reasons that follow, it is concluded that the imported articles are "game machines" within the meaning of item 734.20 and that plaintiff's claim must accordingly be sustained.

At the outset, it is undisputed that the imported merchandise has the capability, when connected to a television set, to be used for playing games. However, in order to be a game machine, in addition to its game capability, the imported merchandise must also be a "machine."

In considering whether or not an article is a machine, it must be borne in mind that there is no judicial determination of what a machine is for tariff purposes. Rather, common meaning is determinative and each case must be decided on its own facts. See, for example, *Morris Friedman* v. *United States*, 57 CCPA 92, 95, C.A.D. 983, 425 F. 2d 768, 770 (1970); *Montgomery Ward & Co.* v. *United States*, 66 Cust. Ct. 233, 239, C.D. 4195 (1971).

In *Simon, Buhler & Baumann (Inc.)* v. *United States*, 8 Ct. Cust. Appls. 273, 277, T.D. 37537 (1918), the court in determining the common meaning of the term "machine" referred to dictionary definitions and concluded that an imported brewery mash filter was not a machine because it was not *"a mechanical contrivance for utilizing, applying, or modifying energy or force or for the transmission of motion."* (Italic added.) Subsequently, in *United States* v. *Idl Mfg. & Sales Corp.*, 48 CCPA 17, C.A.D. 756 (1960), the court stated that the above italicized clause in *Simon, Buhler* "has been * * * often, and * * * erroneously referred to as this court's 'definition' of a machine * * *." Id. at 19. The court in the *Idl* case added that "if the quoted *Simon, Buhler* clause be taken as a definition, then it is an absurdity." Id. at 20. Withal, in the *Idl* case, the court went on to quote with approval (id. at 22) what that court had previously stated in *United States* v. *J. E. Bernard & Co.*, 30 CCPA 213, 219, C.A.D. 235 (1943):

> * * * [A] machine such as Congress had in mind must have some movable parts, and must do some of the things pointed out in the *Simon, Buhler* case.

In other words, to be a machine, the article must have some movable parts and "it must utilize, apply, or modify force, or be used for the translation of motion." *Rosenblad Corp.* v. *United States*, 49 CCPA 81, 85, C.A.D. 800 (1962). See also, e.g., *Nord Light, Inc.* v.

*United States*, 49 CCPA 12, 15, C.A.D. 786 (1961); *William H. Masson, Inc.* v. *United States*, 66 Cust. Ct. 55, 62–3, C.D. 4167 (1971).

Applying these principles to the case at hand, here, the imported merchandise has movable parts, such as knobs, switches, and controls. In addition, the articles serve to modify energy or, specifically in this case, they change electrical impulses in such a way as to form visual images and create and transmit sound. It is also to be noted that the imported articles possess the optional capabilities of relying upon their own internal power source (when batteries are installed) or utilizing an external power supply by attachment of readily obtainable adaptors to ordinary house current. Further, the fact that the articles operate in conjunction with electrical as opposed to physical forces does not preclude them from classification as machines. See, e.g., *United States* v. *L. Oppleman, Inc.*, 25 CCPA 168, T.D. 49271 (1937); *United States* v. *J. E. Bernard & Co.*, *supra*, 30 CCPA 213.

Particularly relevant in the present case are *United States* v. *Janson Co.*, 16 Ct. Cust. Appls. 315, T.D. 43075 (1928) and *Allen Forwarding Co.* v. *United States*, 49 Treas. Dec. 706, T.D. 41506 (1926), wherein radio receiving sets were held to come within the term "machine." In *Allen Forwarding Co.*, the court stated (id. at 708):

> However, we experience no hesitancy in holding that a radio receiving set is a machine, and that the present loud speakers and movements therefor are exclusively employed as parts thereof. * * * A radio set takes waves electrically broadcasted and by utilizing and applying thereto electrical energy or force so modifies those waves that it produces sounds through the mechanical vibration of its diaphragm. * * *

In the *Janson Co.* case, the court stated the same proposition in the following manner (16 Ct. Cust. Appls. at 317):

> A radio receiving set, having conducted to it the tenuous impacts of electrical energy, receives and manipulates them and in a most marvelous way converts them into a reproduction of sound. If this is not a machine it would be hard to conceive what would constitute one.

The imported articles before the court perform much the same functions as the radio receiving sets discussed above. For the articles (in addition to having a self-contained audio producing function) manipulate (modify or change) electrical impulses to produce visual images. The articles can be manipulated so as to cause a change in the paddle size, speed of the ball, the movement of the paddles, the image of the playing court, and the angle of the ball projectory. Although connection to a television set is required in order to see these changes, the modification of the electrical impulses actually takes place within the imported articles.

Defendant, however, insists that the imported articles cannot be "machines" because they require attachment to television sets in

order to perform their ultimate function in connection with game playing. However, a similar argument was rejected in *Lanvin Parfums, Inc.* v. *United States,* 54 Cust. Ct. 273, C.D. 2543, appeal dismissed, 53 CCPA 155 (1965), where certain atomizer tops were held to be machines notwithstanding that in order to function they had to be attached to a bottle having a matching thread. Such bottles were not imported with the atomizer tops and were not a subject of the court's determination. The court stated (54 Cust. Ct. at 277):

> We consider as untenable the contention of defendant herein that the imported articles "standing alone" can not perform their intended function. In this regard, we believe the atomizers in controversy to be just as much machines in themselves and capable of performing the function for which they were designed as were the pulleys in the *Nord Light* case, *supra,* which, when in use, were attached by a cable to a suspended object, and the rotary lawn sprinklers in *The Durst* case, *supra,* which, to fulfill their purpose, must be attached to lengths of hose and water pressure applied.

In both of the cases cited above (*The Durst Mfg. Co., Inc.* v. *United States,* 50 CCPA 56, C.A.D. 820 (1963), and *Nord Light, Inc.* v. *United States, supra,* 49 CCPA 12), the Court of Customs and Patent Appeals held articles to be classifiable as machines despite the fact that each required the attachment of an object outside the machine itself in order to be capable of performing its intended function.

In the *Durst* case, rotary lawn sprinkler tops which were conceded to be parts of rotary lawn sprinklers were held to be parts of machines since the court found that rotary lawn sprinklers were machines for tariff purposes. The facts in that case are similar to those here in that the rotary lawn sprinklers had no use whatever until they were attached to a garden hose and the water from the hose activated the sprinklers.

In *Nord Light, Inc., supra,* the merchandise consisted of light fixture pulleys into which cable was threaded so that one end of the cable could be attached to a ceiling mounted support bracket and a light fixture could be attached to the other end of the cable. By moving the pulley upward or downward the light fixtures attached to the cable could be raised or lowered to a desired position and held at that position by the interior mechanism of the pulley. This light fixture pulley was held to be a machine for tariff purposes by the Court of Customs and Patent Appeals. Here again, as with the importations before us, the facts clearly show that the imported pulleys could not be used in the condition in which imported and had to be used in conjunction with another article, i.e., a light fixture.

Another relevant case is *Westinghouse Electric International Co.* v. *United States,* 28 Cust. Ct. 209, C.D. 1411 (1952), where it was claimed that certain articles were not photographic cameras because they

were incapable of functioning as a camera except when attached to a particular X-ray apparatus. The court found the importations were classifiable as photographic cameras on the following basis (id. at 214):

> While, in its condition as imported, the Helm camera before us is incapable of taking any kind of a picture and cannot take a photograph nor use ordinary photographic film and can only function when used with a particular kind of X-ray apparatus, it, nevertheless, in its final use, is a camera which takes and produces a photograph. We, therefore, find that the imported article is a photographic camera as that article is described in paragraph 1551.

Fourteen years later the Court of Customs and Patent Appeals in its review of the third trial involving the above-discussed camera cited with approval the determination of this court in the *Westinghouse* case. See *Fairchild Camera & Instrument Corp., Inter-Maritime Forwarding Co., Inc.* v. *United States*, 53 CCPA 122, 126, C.A.D. 887 (1966).

The foregoing cases—which have neither been distinguished nor even cited by the defendant—are thus controlling. Moreover, item 734.20, the provision for game machines, is, as the parties agree, more specific than item 735.20, the provision for game equipment under which the imported merchandise was classified. Therefore, under the rule of relative specificity—TSUS general interpretative rule 10(c)— the imported merchandise is properly classifiable under item 734.20 as game machines, as claimed by plaintiff. Judgment for plaintiff will be entered accordingly.