(C. D. 1164)

M. PRESSNER & Co. *v.* UNITED STATES

United States Customs Court, Second Division

(Decided March 10, 1949)

*Siegel, Mandell & Davidson* (*Joshua M. Davidson* of counsel) for the plaintiff.

*David N. Edelstein*, Assistant Attorney General (*Richard H. Welsh*, special attorney), for the defendant.

*Barnes, Richardson & Colburn* (*Eugene F. Blauvelt* and *J. Bradley Colburn* of counsel) as amicus curiae.

Before LAWRENCE and TILSON, Judges; RAO, J., not participating

LAWRENCE, Judge: This case poses the rather unique question whether an importation of what are familiarly known as zippers or slide fasteners should be classified as machines, not specially provided for, enumerated in paragraph 372 of the Tariff Act of 1930, and subjected to duty at the rate of 27½ per centum ad valorem.

The collector of customs classified the importation as articles or wares, not specially provided for, composed wholly or in chief value of copper in paragraph 397 of said act and imposed duty at the rate of 45 per centum ad valorem, plus 3 cents per pound copper tax levied pursuant to the provisions of section 3425 of the Internal Revenue Code. The imposition of the copper tax is not here in controversy.

At the trial of the issue, a stipulation of counsel for the respective parties was admitted in evidence as exhibit A to explain the operation of the articles in controversy. Also in evidence as exhibit 1 is one of the zippers the classification of which is contested, and as illustrative exhibit 2, there was introduced a slide fastener of American manufacture from which part of the back had been removed to disclose its functioning.

In view of its pertinency to a determination of the question here presented, the stipulation (exhibit A) referred to, *supra*, is set forth practically *in toto*—

IT IS STIPULATED AND AGREED, by and between the attorneys for the parties hereto, in the matter of the above protest, subject to the approval of the Court, as follows:

1. That the slide fastener or so-called "Zipper" submitted herewith is a representative sample of the merchandise invoiced in the entry covered by the protest at bar and described as "Nickel finish slide fastener", with or without qualifying words of description, and that such sample be marked Exhibit 1 herein.

2. That Exhibit 1 consists of two strips of cotton tape material, each approximately ½ inch wide, joined at one end by a small metal staple. There are attached to the inner edges of each strip and evenly spaced therein a series of identical metal teeth approximately ⅛ inch long and 1/16 inch wide, with a projection on one side and a recess on the other side of each tooth, set into a metal sliding member or slider for engaging and disengaging the metal teeth.

3. The metal slider is approximately ½ inch wide at the top portion and ¼ inch wide at the bottom portion, with two channels, one on each side converging at the narrow end, so that the slider may move longitudinally in either direction along the two rows of teeth.

To this slider is attached a small metal tab called a "pull tab".

4. To close the slide fastener, the pull tab is grasped by the fingers and the slider to which it is affixed moves along the two opposing rows of teeth which enter at the wide end of the slider, causing the projection of one tooth to engage the recess of the opposite tooth as they meet within the channel of the slider as the slider proceeds from bottom to top, thus causing them to interlock and emerge in a flexible and continuous unit.

To open the slide fastener, the pull tab is grasped and the slider is pulled in the opposite direction, thus causing the interlocked unit of teeth to enter the channel of the slider at the narrow part thereof, causing separation of the interlocking units and release of the teeth.

5. Exhibit 1 is illustrative of the operation of the principle of all slide fasteners or zippers, although the shape of the metal parts and the size and length of individual units may vary.

6. Exhibit 1 and slide fasteners generally have no use as separate articles, but are used only when incorporated in other articles such as handbags or wearing apparel in place of buttons, hooks and eyes, snap fasteners, buckles, straps, laces and other fastening objects.

7. IT IS FURTHER STIPULATED AND AGREED, that the slide fastener or so-called "zipper" submitted herewith as Illustrative Exhibit 2 operates in the same manner as Exhibit 1 but represents an American made "Talon" fastener, from which the back plate of the slider has been cut out for purposes of this trial permitting visual examination of the meshing of the interlocking elements.

The testimony of only one witness was offered in evidence. Edwin Fayette Church, called on behalf of the plaintiff, testified that he is professor of mechanical engineering at the Polytechnic Institute of Brooklyn, New York, where he has been for the past 26 years, and that he has been engaged in engineering work for 43 years. He stated that he is familiar with zippers similar to exhibit 1 and with the fundamental types or elements of machines. In his opinion, the fundamental type of machine operation involved in exhibit 1 is the wedge or inclined plane; that exhibit 1 is a mechanical contrivance, and that the hand power applied by pulling the zipper tab in a longitudinal direction which causes a transverse force to be exerted on the slider which brings together the two opposing rows of teeth is an application or modification of force or energy. The witness expressed himself further as being of the opinion that a child's tricycle is a machine, as are a lever which turns on and off a lamp, a mechanical pencil, a barber's chair, an invalid's chair propelled by hand, and a hand-operated carpenter's brace and bit.

Counsel for both plaintiff and defendant cite in their briefs the case of *Simon, Buhler & Baumann (Inc.)* v. *United States*, 8 Ct. Cust. Appls. 273, T. D. 37537, as setting forth what constitutes a machine, to wit, a mechanical contrivance for utilizing, applying, or modifying energy or force, or for the transmission of motion. Numerous other cases have been cited by the parties, most of which rest upon the *Simon, Buhler & Baumann* case, *supra*, and all of which have been carefully considered. Those deemed applicable to a decision in this case will be referred to *infra*.

We quote below pertinent language from the case of *United States* v. *Guth Stern & Co., Inc.*, 21 C. C. P. A. (Customs) 246, T. D. 46777—

A careful analysis of this court's opinion in the *Simon, Buhler & Baumann* case, *supra*, will disclose that the court was not there confronted with the necessity of attempting to lay down any precise and all-inclusive definition of the term

"machine" for tariff purposes, nor does the opinion itself purport to do so. It merely recites certain characteristics of a machine as that term and certain associated terms are defined in the standard authorities there cited, for the sole purpose of negativing the contention there made by the Government that a brewery mash filter was a machine.

In headnoting the case, the reporter, utilizing the language used in the text of the opinion, stated the definition affirmatively, and it has since been often quoted by this court, and by the Customs Court, in various cases, in the form adopted by the reporter.

There is no intention of here intimating that the definition, insofar as there stated, is inaccurate. Upon the contrary, it has been consistently adhered to by us, and, by implication at least, it received legislative endorsement, particularly in the Tariff Act of 1930. *Vide* Summary Tariff Information 1929, volume 1, page 841.

However, it has never been the purpose of this court to hold arbitrarily that the definition is so rigid and exact in its terms as to include any and all devices and mechanisms that may happen to be literally embraced within it. An examination of numerous definitions given in the very authorities cited in the *Simon, Buhler & Baumann* case, *supra*, discloses distinctions which should be taken as matters of common knowledge. For example, in Webster's New International Dictionary, it is said:

> * * * According to the strict definition, a crowbar abutting against a fulcrum, a pair of pliers in use, or a simple pulley block with its fall, would be a machine, but ordinary usage would hardly include such as these; while an implement or tool whose parts have no relative movement, as a hammer, saw, chisel, plane, or the like, would not, of itself, in any case be a machine. Popularly and in the wider mechanical sense, a machine is a more or less complex combination of mechanical parts, as levers, cog and sprocket wheels, pulleys, shafts, and spindles, ropes, chains, and bands, cams and other turning and sliding pieces, springs, confined fluids, etc., together with the framework and fastenings supporting and connecting them, as when it is designed to operate upon material to change it in some preconceived and definite manner, to lift or transport loads, etc.

Confronted with claims for classification of various articles as machines, not specially provided for, in paragraph 372 of the Tariff Acts of 1922 and 1930, this court and our appellate tribunal have held the following to come within its purview: Sodium wire press (*Braun Corp.* v. *United States*, 65 Treas. Dec. 387, T. D. 46938); hair driers and vibrators (*E. Stegemann, Jr.* v. *United States*, 46 Treas. Dec. 122, T. D. 40358); hand counters or tallying registers (*United States* v. *Endlein & Schmidt, United Hardware & Tool Corp.*, 22 C. C. P. A. (Customs) 108, T. D. 47082); razor-blade sharpeners (*United States* v. *Guth Stern & Co., Inc.*, 21 C. C. P. A. (Customs) 246, T. D. 46777); meat-grinding machines (*Martin R. Jager* v. *United States*, 46 Treas. Dec. 767, Abstract 48421); hand-operated sprayers (*Emil Gebhardt* v. *United States*, 66 Treas. Dec. 983, Abstract 28998); stapling machines (*T. D. Downing & Co.* v. *United States*, 52 Treas. Dec. 560, Abstract 3762, and *Neva-Clog Products, Inc.* v. *United States*, 65 Treas. Dec. 1164, Abstract 26349); oscillometers (*E. J. Gonet* v. *United States*,

64 Treas. Dec. 1065, Abstract 25942); hoist blocks (*Herbert Morris (Inc.) et al.* v. *United States*, 48 Treas. Dec. 376, T. D. 41196); aneroid barometers (*United States* v. *L. Oppleman, Inc.*, 25 C. C. P. A. (Customs) 168, T. D. 49271); and vertical field balances (*United States* v. *J. E. Bernard & Co., Inc.*, 30 C. C. P. A. (Customs) 213, C. A. D. 235).

The courts ruled contrariwise when classification of the following articles as machines in said paragraph 372 was pleaded: Eyelet punches (*Cahen Stationery Co. et al.* v. *United States*, 66 Treas. Dec. 1060, Abstract 29236); metal valves to regulate the flow of steam, gas, oil, water, or other liquids (*United States* v. *Klingerit, Inc.*, 17 C. C. P. A. (Customs) 472, T. D. 43931); carpenters' braces (*United States* v. *Wm. Goldenblum & Co.*, 18 C. C. P. A. (Customs) 367, T. D. 44616); and children's tricycles (*United States* v. *Associated Mfg. Co.*, 30 C. C. P. A. (Customs) 236, C. A. D. 238).

Coursing through the above-cited cases is the popular definition of a machine above referred to which had its inception in the *Simon, Buhler & Baumann* case, *supra*, as a mechanical contrivance for utilizing, applying, or modifying energy or force, or for the transmission of motion.

Simply because an article provides a mechanical advantage does not warrant its classification as a machine in paragraph 372, *supra*. In *United States* v. *Wm. Goldenblum & Co.*, *supra*, the court had before it the question of the proper classification of carpenters' braces for turning boring bits or drills and used to bore holes in metal or wood. In denying the applicability of the provisions of paragraph 372, *supra*, to such articles, the court there said—

> The mere fact that these tools, solely by virtue of leverage, furnish a mechanical advantage—increased power—is not sufficient to bring them within the provision for all other machines, finished or unfinished, not specially provided for, contained in paragraph 372.    *   *   *

Even granting that the zippers here in controversy operate on the mechanical principle of the wedge or inclined plane and are mechanical contrivances, that alone would not suffice to bring the articles within the purview of said paragraph 372, as was pointed out in the case of *United States* v. *Associated Mfg. Co.*, 30 C. C. P. A. (Customs) 236, C. A. D. 238, which will be referred to *infra*.

Also worthy of particular note in connection with the classification of the zippers before us is the case of *United States* v. *J. E. Bernard & Co., Inc.*, 30 C. C. P. A. (Customs) 213, C. A. D. 235. In that case, in affirming the trial court's ruling for classification of certain vertical field balances as machines in paragraph 372, *supra*, the court said—

> Since the decision in the *Simon, Buhler* case, this court has frequently been confronted with very close questions relating to the determination of what con-

stitutes a machine and has even been called upon to consider a claimed distinction between "machines" and "machinery." The term "machine" is broadly defined in some authorities and more narrowly defined in others. * * *

This is followed by the definition from Webster's New International Dictionary, quoted in the case of *Guth Stern & Co.*, *supra.*

The court then went on to say—

In view of the kind of machines Congress specifically referred to in paragraph 372, and taking into cognizance the more applicable definitions found in the lexicographical authorities as applied to the term "machine" when referred to in a tariff sense, we think that for an importation to respond to that term it must be something more than a "crowbar," "a pair of pliers," or, as was said in the *Simon, Buhler* case, a "kitchen colander or a box of sand for clearing muddy water." It is our opinion that a machine such as Congress had in mind must have some movable parts, and it must do some of the things pointed out in the *Simon, Buhler* case. * * *

The zippers here in controversy have been shown by the record to be operated by hand power applied to a pull tab attached to a slider which causes the slider to move up and down along the two opposing rows of teeth so that the projections of the teeth engage in the recesses of the opposite teeth as they meet within the channel of the slider. They contain no movable parts such as were referred to in the *Bernard* case, *supra*, and may, by analogy of operation, aptly be compared to the children's tricycles the subject of *United States* v. *Associated Mfg. Co.*, *supra.*

In the latter case, the functioning of the articles there in issue was, by agreement of the parties, described as follows:

* * * a tricycle is an article which has three wheels, * * * the motion of the tricycle, or its power of motion, is created by the pressing of the feet of the operator, the child, on pedals which are attached to the front wheel, and by pushing the pedals forward to make the vehicle go forward. * * * It can be reversed or put forward by the appropriate pressure on the pedals which are attached to the front wheel. I am informed by the importer in this case that the pedals are attached to the front wheel, and that the connecting gear, if it may be called that, has the shape of a "u" upside down, and then a "u" as it appears normally, so as to give that turning motion. In other words, it is a bar that goes up and across, and then down, and then across and up.

The tricycles when imported were classified by the collector of customs as articles or wares, not specially provided for, in paragraph 397 of the Tariff Act of 1930. Plaintiff therein filed claim for classification of the articles as machines, not specially provided for, in paragraph 372 of said act, which claim was sustained by this court. Upon appeal, however, the appellate tribunal reversed the trial court and stated—

Of course the tricycles herein are mechanical contrivances. We do not think, however, it can be said that such mechanical contrivances utilize energy or force. They are merely moved, carrying their riders by means of the force exercised on the pedals which turn the front wheel one revolution to every revolution made by

the pedals. Energy or force is applied to the tricycle, but is not utilized by it. A tricycle, in our opinion, is no more a machine than the hoisting apparatus of the old oaken bucket wherein the rope to which the bucket was appended was wound around a drum axle by the rotation of the angle-iron handle.

It is clear that a tricycle does not apply force or energy; the force or energy used in its propulsion is applied to it. Neither does it modify force or energy for the reason that the foot power necessary to turn the front wheel is not changed or modified in any respect by the apparatus. A tricycle such as here involved is not a mechanical contrivance for the transmission of motion.

If the involved tricycles are to be considered in a tariff sense as machines, so is a slingshot, or a peashooter, or an apple on a casting stick, or a bow and arrow, or roller skates, or a pogo stick, or a wheelbarrow. These are all mechanical contrivances for the transmission of force into motion, yet it would be absurd to conclude that simply because they do transmit force into motion they are to be considered as intended by Congress to come within the catch-all portion of the machine paragraph if they were not otherwise specially provided for.

With like effect may it be said of the zippers here in controversy that they are merely moved up or down to the extent that hand power is applied. Energy or force is not applied by the zipper but rather energy or force is applied to it by the hand power. Neither is it true that energy or force is modified or utilized by the zipper. The testimony of plaintiff's witness that pulling the zipper tab in a longitudinal direction causes a transverse force to be exercised on the slider is not such modification or utilization of energy or force as is contemplated by the provision for "all other machines" in said paragraph 372 as construed in the *Simon, Buhler & Baumann* case, *supra*, and as defined and delimited in the long line of decisions which followed it. It is also clear from the evidence before us that in the functioning of the zippers there is no transmission of motion.

To adopt or apply the scientific principles so ably illustrated by plaintiff's witness Church would lead us far afield and result, in substance, in regarding such things as crowbars and wedges as being within the tariff classification of machines. However, our appellate court pointed out long ago in the *Guth Stern & Co.* case, *supra*, that—

\* \* \* According to the strict definition, a crowbar abutting against a fulcrum, a pair of pliers in use, or a simple pulley block with its fall, would be a machine, but ordinary usage would hardly include such as these; \* \* \*

We are clearly of the opinion that zippers are not machines in the tariff sense. We therefore hold that the plaintiff's contention that the zippers here in controversy should be classified as "all other machines, \* \* \* not specially provided for," in paragraph 372 of the Tariff Act of 1930 is without merit. The protest of plaintiff is therefore overruled in all respects and the decision of the collector of customs is affirmed.

Judgment will be entered accordingly.