(C.D. 2678)

Trans Atlantic Co. *v.* United States

United States Customs Court, Second Division

(Decided May 10, 1966)

*Allerton deC. Tompkins* for the plaintiff.

*John W. Douglas*, Assistant Attorney General (*Arthur H Steinberg*, trial attorney), for the defendant.

Before RAO and FORD, Judges, and WILSON, Senior Judge

WILSON, Senior Judge: The merchandise here under protest involves certain "locksets" which were assessed for duty by the collector at the rate of 19 per centum ad valorem under paragraph 397 of the Tariff Act of 1930, as modified by the Sixth Protocol to the General Agreement on Tariffs and Trade, T.D. 54108, as manufactured articles, not specially provided for, in chief value of metal. Plaintiff claims the merchandise properly dutiable at the rate of 11½ per centum ad valorem under paragraph 372 of the act, as modified, *supra*, under the provisions therein for "Machines, finished or unfinished, not specially provided for: Other."

The record consists of the oral testimony of one witness and six exhibits introduced in evidence by the plaintiff. The exhibits consist of the following:

Exhibit 1. This sample represents the items invoiced as S-253 under protest 63/12168; entry No. 12754, protest 63/12174; protest 63/20285; and protest 63/20292, except that it has been broken down to show the working parts.

Illustrative exhibit 1-A. This sample represents exhibit 1 in a mounted condition.

Exhibit 1-B. This sample represents the main assembly of exhibit 1, consisting of the knob, the springs, and the back plate (R. 15).

Exhibit 1-C. This represents the back set of exhibit 1.

Exhibit 2. This sample represents the items invoiced as S-249 under protests 63/12168 and 63/20292, except that it has been broken down to show the working parts. It operates in the same way as exhibit 1 except that it has a locking device with an additional spring and lever (R. 21-23).

Illustrative exhibit 2-A. This sample represents exhibit 2 in a mounted condition.

Exhibit 3. This sample represents the items invoiced as S-153 under entry No. 6063, protest 63/12174, except that it has been broken down to show the working parts. Some of these locks are aluminum, and some are brass (R. 6). They operate in the same way as exhibit 1 but have a different shape (R. 23-24).

Illustrative exhibit 3-A. This sample represents exhibit 3 in a mounted condition.

Exhibit 4. This sample represents the items invoiced as 353 or as 503 under protest 63/20273 in their condition as imported, under protests 63/20273 and 63/20284. They operate in the same way as exhibits 1 and 3, but the knobs are different.

Exhibit 5. This sample represents the items invoiced as 352 or 502 under protests 63/20273 and 63/20284, valued at 87 cents. It also represents the same item 352 valued at 95 cents except that this item

has a chrome finish handle (R. 7–8). They operate in the same way as exhibit 2 and they have a safety feature (R. 24–25).

Exhibit 6. This sample represents the items invoiced as 349 under protest 63/20284 in their condition as imported. They operate in the same way as exhibit 2 but have a different shape (R. 25).

Mr. Allen B. Resnick, plaintiff's assistant sales manager, testified that the business of the plaintiff was importing and selling builders' hardware and that he had become familiar with the involved merchandise by having repaired it (R. 3, 10). Referring to plaintiff's exhibit 1, Mr. Resnick explained the operation of the door knob sets as follows: When the knob is turned in a rotary motion by the hand, the attached spindle is thereby turned, causing the casing, which holds two springs, to be depressed, and causing the spring in the back set also to be depressed at the same time. The action of turning the knob and depressing all the springs disengages the back set from the strike plate, allowing the door to be opened (R. 15, 18–19). After the knob is released, the springs force the back set up again, and when the back set sets itself far enough into the strike plate, the springs return the back set to the locked position (R. 16, 19–20, 25). Plaintiff's witness described the item in question (plaintiff's exhibit 1) as a mechanical locking device (R. 19–20)—a mechanical apparatus (R. 20)—which automatically transmits, utilizes, and modifies energy (R. 18–19, 25). It has three springs and two levers (R. 17), and it utilizes two inclined planes to change the direction or motion of a force—"they change as the door is being closed, it's being pushed in this direction," but the back set must go perpendicular to the closing of the door, which is accomplished by the inclined plane (R. 17–18). Plaintiff's witness stated that, in his opinion, plaintiff's exhibit 1 is a mechanical apparatus (R. 20). On cross-examination, Mr. Resnick stated that the devices before the court, "the handles without the lock, the door handles with the lock," have been referred to or called a machine but that they are not known in the general trade as a "machine" (R. 26).

Mr. Resnick further testified that plaintiff's exhibit 2 operates the same as plaintiff's exhibit 1, except that, in addition, it has a locking feature (R. 21); that the lock is activated by pressing a button on one of the knobs, so that it can be locked on one side and not on the other (R. 22). Plaintiff's witness then explained the operation of the locking mechanism of plaintiff's exhibit 2 as follows:

A. As the button in the knob is depressed, it hits against the casing, forcing a little inclined plate up. And when it is fully depressed it falls behind the casing. On the other side of this action of pressing the button in the knob it puts a metal rod in a keyway which makes it unable for the knob on the opposite end to be turned.

Q. How many mechanical features in addition are contained in Exhibit 2 as compared with Exhibit 1?

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

THE WITNESS: The additional features are the addition of the inclined plane, and also there is a spring behind the knob, behind the button in the knob which allows it, when the door has to be opened, to spring back, thereby disengaging the locking device. [R. 22–23.]

Mr. Resnick further testified that plaintiff's exhibits 3 and 4 operate the same as plaintiff's exhibit 1, and that plaintiff's exhibits 5 and 6 operate the same as plaintiff's exhibit 2.

The issue in the case at bar is whether or not the involved locksets are properly dutiable as "machines." This court and our appellate court have on a number of occasions gone into the question of whether certain articles are, under the tariff law, "machines." In the case of *United States* v. *IDL Mfg. & Sales Corp.*, 48 CCPA 17, C.A.D. 756, involving certain hand-operated paper punches, the court reviewed certain prior decisions on the question as follows: *Simon, Buhler & Baumann (Inc.)* v. *United States*, 8 Ct. Cust. Appls. 273, T.D. 37537 (metal parts for a brewery mash filter) ; *United States* v. *Wm. Goldenblum & Co.*, 18 CCPA 367, T.D. 44616 (carpenters' braces both with and without ratchet attachments) ; *United States* v. *Guth Stern & Co., Inc.*, 21 CCPA 246, T.D. 46777 (manually operated safety-razor blade sharpening device) ; *United States* v. *Endlein & Schmidt, United Hardware & Tool Corp.*, 22 CCPA 108, T.D. 47082 (hand tallying registers) ; and *M. Pressner & Co.* v. *United States*, 22 Cust. Ct. 80, C.D. 1164, affirmed in 38 CCPA 8, C.A.D. 431 (slide fasteners).

The appellate court in the *IDL Mfg.* case, *supra*, in commenting upon the holding of the Customs Court that the involved hand-operated punches were "machines," stated, page 19, as follows:

In its opinion, the Customs court said that the paper punches "fall within the accepted judicial determinations of what constitute[s] a machine, *namely, a mechanical contrivance which utilizes, applies, or modifies energy or force,* or transmits motion," (our emphasis) citing solely the *Simon, Buhler* case, supra. The above italicized passage has been so often, and so erroneously, referred to as this court's "definition" of a machine that it would be well to review just what the *Simon, Buhler* case involved and what it did say. It will also be noted that this case is the source of the Government's argument based on utilization of energy or force. [Emphasis quoted.]

and at page 20, the court in the *IDL Mfg.* case stated:

* * * All the court did was determine that certain essential attributes of machines were lacking in a mash filter so that it could *not* be a machine. Reference to the dictionaries will show that they do not undertake to define machine in terms of the clause so often extracted from the above quotation and dubbed a "definition." Such reference will show, in fact, that the word "machine" does not have a precise definition. [Italics quoted.]

and on page 23, the court in the *IDL Mfg.* case stated:

The state of the case law leads us to but one conclusion. While many items have been held to be, or not to be, "machines," there is no "judicial determination" of what a machine is. It remains simply a question of common meaning and each case must be decided on the basis of its own facts, technical and legislative.

In the present case the merchandise goes by the name of paper punching machines. It falls within the median definitions of "machine" to be found in dictionaries so that one need not apply an extreme definition to include these punches in the term. * * *

In the case of *Linread Products, Inc.* v. *United States*, 39 Cust. Ct. 262, C.D. 1939, the merchandise involved consisted of an article known as a Tutch latch, used as a fastening device on cupboard doors, so constructed that, by a slight manual touch, mechanical parts are put into operation to either lock or unlock a door. The construction and use of the article there in question was described by plaintiff's witness therein, page 264, as follows:

* * * the articles are used as fastening devices on cupboard doors, both in wood and in steel; that they have other uses but stated that while there are many types of door fasteners there are few, if any, such devices which by using the same force not only close doors but open them. Further, the record shows that the force by which the device is actuated is, as its name implies, one of "touching." A spring-loaded plunger or plate when released applies force to a striker plate and, in that way, opens the door. The operation of closing a door equipped with a "Tutch" latch is performed in the reverse manner of applying pressure to the striker plate which places the spring in tension, the latter being secured or locked by a latching hook.

The merchandise in the *Linread* case, *supra*, was classified under paragraph 397 of the Tariff Act of 1930, as amended, as a manufacture in chief value of metal, not specially provided for. Plaintiff therein claimed the merchandise properly dutiable under paragraph 372 of said act, as modified, for all other "machines," finished or unfinished, not specially provided for.

While the court in the *Linread* case held the merchandise properly classifiable within the meaning of said paragraph 372 as a machine, the holding in that case is not necessarily controlling in the case at bar. As was stated in the *IDL Mfg.* case, *supra*, the determination as to what constitutes a "machine" remains simply a question of common meaning and each case must be decided on the basis of its own facts, technical and legislative. The merchandise herein involved differs somewhat from that involved in the *Linread* case, *supra*. The court in the latter case appears to have attached special significance to the spring element in the article there involved as a factor in the application or utilization of energy as would require the article to be classified as a "machine." However, as stated in the case of *A. B. Coppersmith*

*and J. S. Walker* v. *United States*, 43 Cust. Ct. 312, Abstract 63284, *infra*, not every mechanism containing a spring which stores up energy, as the result of the operation of other movable parts, is necessarily to be regarded as a machine. In our opinion, for the reasons advanced in that case and for other reasons advanced in this opinion, we hold that the merchandise here involved is not within the tariff contemplation of paragraph 372 of the act for machines. Other cases hereinafter cited, support, in our opinion, this conclusion.

In the *Goldenblum* case, *supra*, the court had before it the question of the proper classification of carpenters' braces for turning boring bits or drills and used to bore holes in metal or wood. The court therein, in holding that the articles in question were not subject to classification under paragraph 372, *supra*, as "machines," at page 370, stated:

The mere fact that these tools, solely by virtue of leverage, furnish a mechanical advantage—increased power—is not sufficient to bring them within the provision for all other machines, finished or unfinished, not specially provided for, contained in paragraph 372. We are of opinion that the involved articles do not utilize, apply, or modify energy or force, or transmit motion, within the meaning of the definition of machines announced by this court in the *Simon, Buhler & Baumann* case, *supra*, and we so hold.

In the *M. Pressner & Co.* case, *supra*, certain articles known familiarly as zippers or slide fasteners were held not to be classifiable as machines under paragraph 372, *supra*. This court, page 84, stated:

Even granting that the zippers here in controversy operate on the mechanical principle of the wedge or *inclined plane* and are mechanical contrivances, that alone would not suffice to bring the articles within the purview of said paragraph 372 * * *. [Emphasis ours.]

The "locksets" here under consideration consist essentially of two opposing door knobs with various parts in between them, which become operative upon opening and closing the door to which such articles may be attached (R. 15–16). In addition, it appears that plaintiff's exhibit 2 has a locking device so that a door may be locked or unlocked from one side (R. 21–22). As further disclosed by the record, the locksets in their operation are claimed to utilize such features as springs (R. 15–20), leaverage (R. 17), and inclined planes (R. 17, 23). We are of the opinion, however, that in view of the holding of our courts in the *Goldenblum* and *M. Pressner & Co.* cases, *supra*, these features do not necessarily constitute the locksets "machines" within the purview of paragraph 372. See also the case of *A. B. Coppersmith and J. S. Walker* v. *United States*, 43 Cust. Ct. 312, Abstract 63284, wherein the court, page 314, stated:

Not every mechanism containing a spring which stores up energy, as the result of the operation of other movable parts, is necessarily to

be regarded as a machine. In the case of *General Systems Service, Inc.* v. *United States*, 39 Cust. Ct. 506, Abstract 61376, looseleaf binders, containing spring blades for keeping the binders open and closed, were held not to be machines within the rule of the *Simon, Buhler* case. In the case of *Border Brokerage Company* v. *United States*, 41 Cust. Ct. 236, C.D. 2046, so-called spring stake bunks, whose springs caused the stakes to be returned from a downward to an upright position, were also excluded from the provisions for machines. Whenever a spring is in compression or tension, energy must, of course, be stored in its coils, and when the pressure or tension is relaxed, the stored up energy is naturally released. If, however, nothing more is accomplished by the spring than that it maintains a position into which a component of a unit has been placed, or permits the component to return to a previous fixed position, there is not such an application or utilization of energy as would require the unit to be embraced by any tariff provision for machines.

As heretofore noted (*IDL Mfg.* case, *supra*), the *Simon, Buhler* case, *supra*, upon which the plaintiff relies did not state that every device utilizing or modifying force was, by reason of that single factor alone, a "machine." In *L. Oppleman, Inc.* v. *United States*, 3 Cust. Ct. 301, C.D. 260, the court, page 302, stated:

* * * While it is true that the present miniature pistols are in a sense mechanical contrivances which utilize energy or force, nevertheless in our opinion it never was the intention of the Congress to have such articles classified as machines. * * *

In *Verity Southall, Ltd., et al.* v. *United States*, 53 Cust. Ct. 266, Abstract 68758, the court held certain metal grinder sets used in the manufacture of pepper mills properly dutiable under paragraph 397 of the Tariff Act of 1930, as modified, *supra*, as metal articles rather than classifiable as food grinding machines, or, alternatively, as parts of other machines under paragraph 372 of the act, as modified. The record in that case disclosed that the pepper mills ground pepper or other spices when hand energy was applied to the movable top portion of the mill which caused the contents of the machine to be moved further into the grinding part; that the pepper was then ground and dispensed out of the bottom of the pepper mill; and that the knob at the top of the mill adjusted the amount to which the pepper seeds were to be ground. The court in the *Verity Southall* case, *supra*, referred to the *IDL Mfg.* case, *supra*, and the cases of *Nord Light, Inc.* v. *United States*, 49 CCPA 12, C.A.D. 786, and *The Durst Mfg. Co., Inc.* v. *United States*, 50 CCPA 56, C.A.D. 820, and then commented, page 268:

We do not believe that a pepper mill such as plaintiffs' illustrative exhibit 2 which utilizes the imported parts, falls within the common meaning of the term "machine." * * *

In our opinion, the locksets at bar do not fall within the common meaning of the term "machines." It may be further noted that in the *Oppleman* case, *supra*, the court observed (page 302) that the so-called "charm pistols" there involved could be and were employed as useful pistols and were commercially bought and sold as such. In the case at bar, the record discloses that the involved "locksets" are not bought or sold as any type of machine, a further factor which, in our opinion, precludes their classification as such.

In view of our holding herein, we deem it unnecessary to make further comment as to other cases cited by the plaintiff in its brief. On the basis of the record herein and the applicable authorities, we are of opinion and hold that the involved "locksets" are properly dutiable as classified. The protest in this case is overruled. Judgment will issue accordingly.