**Morris FRIEDMAN**

v.

**UNITED STATES.**

**C.D. 3737; Protest No. 63/20288–93635.**

United States Customs Court,
Second Division.

March 13, 1969.

Allerton deC. Tompkins, New York City, for plaintiff.

William D. Ruckelshaus, Asst. Atty. Gen. (Brian S. Goldstein, New York City, trial attorney) for defendant.

Before RAO, Chief Judge, and FORD, and NEWMAN, Judges.

NEWMAN, Judge:

This case is, in effect, a retrial of the issue presented in General Systems Service, Inc. v. United States, 39 Cust. Ct. 506, Abstract 61376 (1957), where in overruling the protest, this Court in an opinion by Ford, J., held that certain loose leaf devices were not "machines" within the rule of Simon, Buhler & Bauman (Inc.) v. United States, 8 Ct.Cust. Appls. 273, T.D. 37537 (1918).

We are now called upon to determine the proper tariff classification of three ring and six ring loose leaf note book mechanisms, of the type familiar to every clerk and student.

These imported mechanisms were classified by the collector of customs under the so-called "basket" provision of paragraph 397 of the Tariff Act of 1930, as modified by T.D. 54108, for manufactured articles, not specially provided for, in chief value of steel, and accordingly assessed with duty at the rate of 19 per centum ad valorem. However, plaintiff claims that the merchandise is properly dutiable at the rate of 10½ per

centum ad valorem under the provision in paragraph 372 of the Act, as modified by T.D. 55615 and T.D. 55649, for "Machines, finished or unfinished, not specially provided for: Other."

## The Issue

The sole issue is whether these imported loose leaf note book mechanisms are "machines" for tariff classification purposes.

## Statutes Involved

Paragraph 397 of the Tariff Act of 1930, as modified by T.D. 54108:

Articles or wares not specially provided for, whether partly or wholly manufactured:

\*  \*  \*  \*  \*  \*  \*  \*

Composed wholly or in chief value of iron, steel, copper, brass, nickel, pewter, zinc, aluminum, or other base metal (except lead), but not plated with platinum, gold, or silver, or colored with gold lacquer:

\*  \*  \*  \*  \*  \*  \*  \*

Not wholly or in chief value of tin or tin plate:

\*  \*  \*  \*  \*  \*  \*  \*

Other \* \* \* ....................19% ad val.

Paragraph 372 of the Tariff Act of 1930, as modified by T.D. 55615 and 55649:

Machines, finished or unfinished, not specially provided for:

\*  \*  \*  \*  \*  \*  \*  \*

Other \* \* \* ..................10½% ad val.

---

## The Record

The articles involved are mounted in hard covers, and when thus assembled become, what are commonly referred to, as loose leaf note book covers or binders. Such articles, with loose leaf paper inserted in the rings, are generally utilized as a convenient means of recording notes and retaining information by students, clerical employees, and others. When the need arises, the user of the notebook may, by utilizing such devices as are herein involved, readily insert new pages or remove pages which he no longer desires to retain, merely by opening and closing the rings. It is upon the mechanical features involved in this latter operation, explained hereafter, that plaintiff factually predicates its claim that the loose leaf mechanisms should be classified as "machines" for tariff purposes.

The loose leaf mechanisms, as represented by Plaintiff's Exhibits 1 through 4, consist of an external metal cover extending the entire length of the device, with a lever located at one or both ends.[1] Internally, the devices utilize in their operation a lever and fulcrum action in connection with a spring

[1.] Exhibit 1 has a lever at one end only; the other three exhibits have levers at both ends of the devices. The cover of Exhibit 4 has been partially removed to expose the inside for our examination.

in the form of a blade divided into two segments. The rings are riveted to the two segments of the spring in such manner that the rings open and close as the shape of the spring changes.

To open the rings, the levers at the extreme ends of the device are manually forced outward. The rings open through an interaction of the lever and fulcrum and the spring. The lever and fulcrum operate on a ratio of either two to one or four to one, depending upon the length of the lever on each side of the fulcrum in the particular device. In opening the rings, the direction of the energy (kinetic)[2] applied to the levers is changed by the spring, the two segments of which move (longitudinally) from a convex to a concave configuration, causing the spring to move upward inside the cover. The concave position of the two spring segments, in turn, causes the rings to open. When the rings are in an open position, the spring is continuously under tension due to the confinement of the two segments in the cover, and the jaws of the rings are virtually locked in an open position, so that loose leaf paper can be inserted or removed.

To close the rings, manual pressure is applied to the levers in an inward direction, or to the rings themselves by forcing them into a closed position. This action causes the two segments of the spring to return from a concave to its convex configuration, and the levers will then be in their initial position. In the closed position, the spring is also under tension because of its pressure against the cover, and this locks the rings in the closed position, with the resultant holding in place of the loose leaf paper.

The shape and form of the spring and its confinement inside the cover continuously exert the required tension to hold the rings open or closed, as desired by the user.

As observed above, the issue involved herein was determined by this Court favorably to the Government in General Systems Service, Inc. v. United States, *supra*, where the loose leaf mechanisms before the Court were held dutiable under paragraph 397, Tariff Act of 1930; viz, as not "machines." Nevertheless, plaintiff insists (Brief, pages 4–5) that three holdings of the appellate court, rendered subsequent to our decision in *General Systems Service*, are determinative here, assertedly involving "mechanical articles employing similar principles [to loose leaf mechanisms], [and] holding that they should be classified as machines (Par. 372)." Thus, plaintiff relies primarily on United States v. IDL Mfg. & Sales Corp., 48 CCPA 17, C.A.D. 756 (1960); Nord Light, Inc. v. United States, 49 CCPA 12, C.A.D. 786 (1961); and Durst Mfg. Co., Inc. v. United States, 50 CCPA 56, C.A.D. 820 (1963); and although not expressly so stated in his brief, plaintiff apparently considers the decision in *General Systems Service* to be in conflict with those three appellate holdings. Additionally, plaintiff has directed our attention to a number of other decisions of both this and our appellate court, wherein it is claimed that "simple devices, each having only a small or nominal mechanical feature, have been held to be machines." (Brief, pages 6–8).

Defendant contends that *General Systems Service* is *stare decisis* of the issue presented herein; and also relies heavily upon Trans Atlantic Co. v. United States, 56 Cust.Ct. 458, C.D. 2678 (1966), aff'd 54 CCPA 75, C.A.D. 909 (1967), decided subsequent to the three appellate court decisions cited by plaintiff.

■■ We are persuaded by the decision of our appellate court in *Trans Atlantic* that there is no necessary conflict between this Court's finding in *General Systems Service* and the appellate court's decisions in *IDL, Nord Light,* and *Durst.* Consequently, we agree with defendant's contention that our prior decision is *stare decisis.*

---

2. "Kinetic energy is a force applied with our hands or by means of mechanisms. Potential energy is something which is stored in the body" (R22).

In *Trans Atlantic*, the issue presented was whether certain keyless door locks (lock sets) were "machines" within the contemplation of the Tariff Act. The appellate court described the lock sets as—

* * * two opposing door knobs and a latch or tongue mechanically interconnected. Turning either door knob withdraws the latch from its aperture in the door frame and permits the door to be opened. This operation is said to utilize springs, inclined planes, and levers. [54 CCPA at 75]

The holding below was summarized by the appellate court (*id.* at 76):

* * * It [Customs Court] reviewed several cases, its own and ours, and concluded that the mere utilization, in the imported devices, of springs, levers, and inclined planes would not, of itself, require their classification as machines. [footnote reference omitted]. In the [Customs] court's opinion, the lock sets did not "fall within the common meaning of the term 'machines'", nor were they "commercially bought and sold as such."

In affirming our decision and judgment, the appellate court further stated (at 77):

It is, however, common meaning rather than complexity which is determinative. United States v. Idl Mfg. & Sales Corp., *supra*. Appellant's witness has testified that these lock sets are not known as machines "in the general trade." Nor do they seem compellingly analogous to other devices concededly machines within the meaning of the tariff law. They, unlike most of the devices in the cited cases,

do not *make* or *act on* something outside themselves. Complexity alone is urged. It is not enough. [Emphasis in original.]

Among the "cited cases" by plaintiff are *IDL* and *Nord Light*. Just as the appellate court in *Trans Atlantic* held that the lock sets were not analogous to the paper punches in *IDL* or light fixture pulleys in *Nord Light* (as well as "other devices concededly machines") because the lock sets did "not make or act on something outside themselves," it logically follows that loose leaf devices are not analogous to those articles for the same reason. The function of the keyless door locks was, of course, to hold the door in a closed and/or locked position, when so desired. They did not, however, *act* on either the door or door frame when the door was either opened or closed. And unlike the hole punching machines in *IDL*,[3] the loose leaf mechanisms do not put holes in loose leaf paper, nor do they *act* on the paper in any manner. In light of the appellate court's apposite decision in *Trans Atlantic*, the loose leaf mechanisms cannot be classifiable as "machines," notwithstanding that they operate on mechanical principles "identical" to those involved in the operation of paper punching machines, and assuming plaintiff's contention, are more "complex" than the latter.[4]

In point of fact, we have noted that in *IDL* the appellate court considered, in classifying the hole punchers as "machines," that "the merchandise goes by the name of paper punching machines," and are "very like stapling machines in their nature and use, punching holes in paper, as a hand operation, as compared to similarly inserting staples in paper"

3. *IDL* involved two models of hand-operated paper punches, each containing two punching dies normally held open by a spring. The dies were closed to punch holes by the manual operation of a member, which acted on the dies as a lever which multiplied the applied force. Actuation of the lever by hand to punch holes compressed the spring, which opened the dies automatically when the pressure was released.

4. Plaintiff contends that both devices—in *General Systems* and in *IDL*—"employed 'identical' mechanical principles, but that the articles here involved were mechanically more complex" (Brief, page 4).

(48 CCPA at 23–24).[5] Plainly, the loose leaf mechanisms do not involve similar considerations.

Plaintiff's reliance on *Durst* is misplaced for the same reasons previously pointed out in our discussion of *IDL* and *Nord Light*. In short, *Durst* held that rotary lawn sprinkler tops are classifiable as parts of machines under paragraph 372. The evidence showed that the rotary lawn sprinklers functioned through interaction with water to produce a spray.[6] It is apparent that such a device is not analogous to the loose leaf mechanisms, for the same reason that the latter are not analogous to the hole punchers in *IDL* or the light fixture pulleys in *Nord Light*.

Fundamentally, too, in the absence of a clear and convincing showing of error, this Court should not disturb a former holding. United States v. Dodge & Olcott, Inc., 47 CCPA 100, C.A.D. 737 (1960); United States v. Charles H. Demarest, Inc., 45 CCPA 109, C.A.D. 682 (1958). General Systems Service, therefore, is *stare decisis* of the issue posed herein.

We thus conclude that the loose leaf mechanisms are not classifiable as "machines" under paragraph 372 of the Tariff Act of 1930, as modified, and were properly classified by the collector under paragraph 397 of the Act, as modified.

The protest is overruled, and judgment will be entered accordingly.

FORD, Judge (concurring).

I concur in result.

5. Since stapling machines had been held in T. D. Downing & Co. v. United States, 52 Treas.Dec. 560, Abstract 3762, to be dutiable as "machines" under the provision of the 1922 Tariff Act corresponding to paragraph 372 of the 1930 Tariff Act, which decision had been known to Congress (through the Summary of Tariff Information, 1929), when it passed the 1930 Act, and Congress retained the provision substantially unchanged, the appellate court implied a legislative approval of the classification as "machines" of devices similar to the paper punching machines.

6. This was explained by the court as follows (50 CCPA at 61): "* * * the energy in the moving stream of water is applied to the sprinkler head to cause it to rotate. The outward motion of the water from the nozzles produces, by reaction, rotary motion of the mechanical device. The rotary motion of the sprinkler acts, in turn, on the moving stream of water to distribute it over the desired circular area. The energy of the water is converted by the sprinkler into mechanical motion, making a small water motor out of the sprinkler head which does useful work in distributing the water where it is wanted."