**Morris FRIEDMAN, Appellant,**

v.

**The UNITED STATES, Appellee.**

**Customs Appeal No. 5355.**

United States Court of Customs and Patent Appeals.

May 14, 1970.

Allerton deC. Tompkins, New York City, for appellant.

William D. Ruckelshaus, Asst. Atty. Gen., Andrew P. Vance, Chief, Customs Section, Robert Blanc, New York City, for the United States.

Before RICH, Acting Chief Judge, BALDWIN and LANE, Judges, and JONES, Senior Judge, United States Court of Claims, sitting by designation.

RICH, Acting Chief Judge.

This appeal is from the judgment of the United States Customs Court, Second Division, 62 Cust.Ct. 252, C.D. 3737, 296 F.Supp. 346, overruling a protest to the classification of imports invoiced as "Six Ring Loose Leaf Mechanisms" and "Three Ring Loose Leaf Mechanisms."

The mechanisms were classified under paragraph 397 of the Tariff Act of 1930, as modified by T.D. 54108:

> Articles or wares not specially provided for, whether partly or wholly manufactured:
>
> \*   \*   \*   \*   \*   \*   \*   \*
>
> Composed wholly or in chief value of iron, steel, copper, brass, nickel, pewter, zinc, aluminum, or other base metal (except lead), but not plated with platinum, gold, or silver, or colored with gold lacquer:
>
> \*   \*   \*   \*   \*   \*   \*   \*
>
> Not wholly or in chief value of tin or tin plate:
>
> \*   \*   \*   \*   \*   \*   \*   \*
>
> Other   \*   \*   \* ............................... 19% ad val.

They are claimed under paragraph 372 of the Tariff Act of 1930, as modified by T.D. 55615 and T.D. 55649:

> Machines, finished or unfinished, not specially provided for:
>
> \*   \*   \*   \*   \*   \*   \*   \*
>
> Other   \*   \*   \* ............................... 10½%   ad   val.

---

The sole issue is whether these imported loose-leaf notebook mechanisms are "machines" for tariff classification purposes.

The record, consisting of physical exhibits representative of the imported merchandise and the testimony of two witnesses appearing on appellant's behalf, reveals that the loose-leaf mechanisms involved are of the familiar type commonly used in loose-leaf books to hold loose-leaf pages. They are assembled to covers after importation.

The first witness merely identified the physical exhibits, samples of the imported 6¼ inch six-ring mechanism and a 3-ring mechanism with 1½ inch diameter rings. He said they are mounted in hard covers to make loose-leaf books which are primarily used by children in school. One exhibit was partly opened up to disclose the mechanism more fully.

William C. Puder, a consulting mechanical engineer, also testified for the importer that by applying pressure to the lever or levers forming part of the device, tension is transferred to "springs," the segments of which move longitudinally from a convex to a concave configuration causing the rings riveted to the "springs" to open. He further stated that the rings are closed either by applying pressure to the levers in the opposite direction or to the rings themselves, and that the sole function of the levers and spring-like device is to open or close the loose-leaf rings. The witness further testified that the mechanisms in question transmit motion, utilize energy, multiply force, change one form of motion or energy to another form, and change the direction of an applied force.

The Customs Court had long ago held that loose-leaf mechanisms were not "machines" in General Systems Service, Inc. v. United States, 39 Cust.Ct. 506, Abstract 61376 (1957). This case is, in effect, a retrial of the same issue, appellant having concluded that certain subsequent decisions of this court holding various devices to be "machines" within paragraph 372 might lead to a different conclusion of law. The cases

primarily relied on are United States v. IDL Mfg. & Sales Corp., 48 CCPA 17, C.A.D. 756 (1960), holding that a two-hole, hand-operated paper punch was a machine for tariff purposes; Nord Light, Inc. v. United States, 49 CCPA 12, C.A.D. 786 (1961), finding lighting fixture cable reels to be "machines"; and Durst Mfg. Co. v. United States, 50 CCPA 56, C.A.D. 820 (1963), holding that a water-jet-activated rotary lawn sprinkler was a machine for tariff purposes. The mechanisms here involved, appellant contends, embrace the same mechanical principles as the paper punch and therefore should be classified as "machines."

The Customs Court, after considering the implications to be drawn from the above cases, considered our more recent holding in Trans Atlantic Co. v. United States, 54 CCPA 75, C.A.D. 909 (1967), wherein we held that keyless door lock sets were not machines under paragraph 372. It said:

> We are persuaded by the decision of our appellate court in *Trans Atlantic* that there is no necessary conflict between this Court's finding in *General Systems Service* and the appellate court's decisions in *IDL, Nord Light,* and *Durst.* Consequently, we agree with defendant's contention that our prior decision is *stare decisis.*

We are in accord with the view that there is no necessary conflict. As we said in *IDL* and repeated in *Durst,*

> █ While many items have been held to be, or not to be, "machines," there is no "judicial determination" of what a machine is. It remains simply a question of common meaning and each case must be decided on the basis of its own facts, technical and legislative.

So that it will be clear just what we are deciding in this case, we shall first attempt to make clear what its facts are, a matter on which there is considerable confusion in the briefs and record. With reference to the sketches below, which we have made from the exhibits, we shall explain the structure and mode of operation of the loose-leaf notebook mechanisms.

FIG. 1   FIG. 2

[A1693]

The two halves of the split notebook paper-retaining rings are shown at R' and R". The views are taken longitudinally of the notebook back and in cross-section through the mechanism adjacent one of the rings. The ring halves are secured in longitudinally extending bars X and Y by riveting them therein as shown at r. Bars X and Y have their inner edges in abutting relation and are

provided with means, not shown, by which these edges are interlocked, hinge fashion. The outer longitudinal edges of X and Y are retained by the inwardly bent edges e of a thin sheet-metal cover or sheath S which is slightly crowned. The sheath S is made of spring metal and, as shown with slight exaggeration, bars X and Y are relatively thicker and more rigid. The combined width of bars X and Y is slightly greater than the space between the edges of sheath S so that the bars tend, under spring pressure from sheath S, to flip either down as shown in Fig. 1, into ring-closed position, or up as shown in Fig. 2, into ring-open position. This over-centering action causes the rings to snap open or closed in the manner familiar to everyone and as everyone knows the rings can be opened by pulling on them or by applying pressure in the direction of the arrow in Fig. 1 through a small lever (not shown) mounted in one end of the mechanism to be pushed by the fingers. When such pressure is applied, it brings bars X and Y into a common plane (centered) and this stretches sheath S laterally, storing energy in it as a spring. The centered condition is unstable and if pressure is continued the bars will snap into the position shown in Fig. 2 and remain there. The rings can be closed by pressure applied in the direction of the arrows in Fig. 2 or, if the lever is properly associated with the bars, by reverse pressure applied thereto to move the bars back to the Fig. 1 position. The imports include mechanisms having single levers at one end or two levers at opposite ends. Some function only to open the rings and some both to open and close them.

The foregoing operation is transparently clear from the specimens but the testimony, the briefs, and the opinion below are somewhat at odds with it because of references to bars X and Y as "springs," which they are not except possibly in the sense that they spring up and down with the above-described over-centering spring *action*. The only element in the mechanism which conforms to the definition of a spring functionally * is the sheath S. Appellant's consulting mechanical engineer witness apparently recognized this in saying that "we use kinetic energy and we store potential energy in this outside metal-like [metallic?] cover," notwithstanding the fact he called the bars X and Y springs. Exhibits are potent witnesses, if understood.

■■ All we have to decide is whether the above mechanism is or is not a "machine" within the meaning of the term in paragraph 372, utilizing such help as we can get from definitions and precedents. Appellant's engineer-witness of course expressed his personal opinion, in response to a direct question, whether all of the exhibits "are machines," that they are. One man's opinion is not controlling. No one testified that they are commonly so regarded. Appellant's major effort was directed to comparing this case with the *IDL* case with respect to the factors of utilization of energy, transmission of power and motion, increasing the intensity of applied force, and change in direction of applied force. We do not think these factors are controlling. The same could have been done with respect to the door lock mechanisms in the *Trans Atlantic* case where we held the lock sets there involved were not machines. We are of the same view here and agree with the conclusion of the lower court that the imports in this case are not machines. We do not think that anything of significance can be added to our discussion of this subject in our opinions in the prior cases above cited. Appellant has made much of the lower court's reference to our observation in the *Trans Atlantic* case that the lock sets did not make or act on something outside themselves. We did not intend to lay that down as a conclusive test which will de-

---

* For example, Funk & Wagnalls New Standard Dictionary, 1913, defines "spring" thus: "1. An elastic structure, body, or contrivance that yields under stress, and returns to its normal form when the stress is removed; * * *."

termine whether an item is or is not a machine. Nevertheless it is true of many things considered to be machines that they do make or act on something else and it is relevant to observe that the loose-leaf mechanisms do not do this.

The judgment of the Customs Court is affirmed.

Affirmed.